133    403
143    603
f143   609

DAILEY *v.* SAGINAW BUILDING & LOAN ASSOCIATION.

1. BUILDING AND LOAN ASSOCIATIONS — MINIMUM PREMIUM — COMPETITIVE BIDDING.

> A by law of a building and loan association fixing a minimum premium is not prejudicial to a borrower, where his loan is made at an advance after competitive bidding.

2. SAME—FORECLOSURE—SETTLEMENT—BILL OF REVIEW.

> Where, subsequent to a foreclosure decree in favor of a building and loan association, the borrower claimed that he had not been credited with certain payments, and the association returned to him a part of the amount claimed, taking his receipt in full of all claims of every kind against the association, he could not afterwards maintain a bill to review the decree upon the ground that he was entitled to credit for further payments, and for certain fines which had been unlawfully imposed.

3. SAME—PLEADING.

> The fact that a settlement between a building and loan association and a borrower, had after foreclosure against both the borrower and his wife, was participated in by him alone, will not warrant reversing an adverse decree on a bill of review brought by both, where it was not relied on in the bill.

Appeal from Saginaw; Beach, J. Submitted May 15, 1903. (Docket No. 85.) Decided June 15, 1903.

Bill by George W. Dailey and Mary Dailey against the Saginaw Building & Loan Association and Mary G. Lewis to review a decree of foreclosure. From a decree dismissing the bill, complainants appeal. Affirmed.

*George C. Ryan* (*Eugene A. Snow*, of counsel), for complainants.

*Nathan S. Wood*, for defendants.

MONTGOMERY, J. This is a bill in the nature of a bill of review. The original bill was a foreclosure bill, and

was filed on November 3, 1894. There was personal service. The Daileys appeared by their solicitor, Mr. Emerick. There was a waiver of service of further notices, and decree was entered in the sum of $3,041.52 and costs, and a sale was advertised, under the decree, for December 21, 1895. Mr. Dailey was present, and asked for and procured an adjournment to December 26th, when a sale of the property was made for $3,000, and a deficiency of $304.21 reported. The building association took possession soon after the sale. Four years after this sale was made, complainants, Dailey, discovered receipts for money paid to the association aggregating $185, which appeared not to have been credited to the Daileys in the foreclosure proceeding. Negotiations were had between themselves, represented by their attorney, and the association, and in November, 1899, nearly four years after the sale, the amount represented by these receipts, with an agreed rate of interest, was paid to Dailey; and a receipt was given, reciting that it was in satisfaction of any and every claim of every kind and character against said association.

The present bill of complaint was filed in February, 1901, more than a year after this settlement, and more than five years after the decree. The bill sets up the claim that, in making the original loan of the association, a minimum premium was fixed by the association of 25 per cent., and that the Daileys' bid was 30 per cent. on the loan. They also set up the claim that they had not received credit for the $185, and did not discover this error until 1899; but it is conceded that the matter was then adjusted, and the money repaid them. They also claim that other payments were made for which no credit was given, and seek to prove this by entries in books in their own possession, and claim that certain fines imposed were improper.

The evidence discloses that there was a by-law fixing a minimum premium of 25 per cent.; but it also appears that the several loans in which complainants are interested were made after competitive bidding, and that the

premiums bid, and upon which the loans were awarded, were 30 and 31 per cent. It further appears that all loans made up to the time that complainants' loans were effected were made upon competitive bidding, and at a per cent. considerably above the minimum fixed by the rules. Under these circumstances, it cannot be said that the rule worked any damage to the complainants. The benefit of free and competitive bidding was had, the same as though no fixed minimum premium had been adopted. While the authorities are not numerous upon the question, a well-reasoned case (*Orangeville Mut. Sav. Fund & Loan Ass'n* v. *Young*) is reported in 9 Wkly. Notes Cas. p. 251. See, also, *Albright* v. *Building & Sav. Ass'n*, 102 Pa. St. 411, 424; Endl. Bldg. Ass'ns, § 411.

The bill also sets up a claim that, in the exchange of property between the defendant Mary G. Lewis and complainants, a loan had been effected upon the property exchanged by Mrs. Lewis with complainants of $400, and that this was concealed from complainants, and that the defendant association was a party to the fraud which was perpetrated upon complainants by such concealment. This is a serious charge, which presents a question of fact, and complainants' claim is supported solely by the testimony of Mr. Dailey. By the overwhelming weight of testimony, this claim is shown to be without any basis of fact. The documents introduced in evidence, and the course of dealing of the parties, leave in our minds no room for doubt that this mortgage was placed upon the property before the exchange was made, and was well known to the complainants, and taken into account in the exchange. Not only are we convinced of this, but so clearly does the testimony satisfy us of this conclusion that we should hesitate to base a decree upon the unsupported recollection of the complainant Dailey. He is so clearly in fault in this particular that the inference of either bad faith or a want of accurate recollection should be applied with more or less force to his other testimony in the case.

The claim is made that a considerable amount of money was paid into the association for which the complainants have not received credit. We cannot overlook the fact that there has been a long delay in asserting this claim. The secretary of the association at the time the payments are claimed to have been made is now at a distant place, and is shown to have been dishonest. But it is significant that the books in which the credits were given were always open to the complainants, and that investigation of these books was attempted at a time when the settlement hereinafter referred to was made. We should hesitate after this lapse of years to base a decree upon the unsupported testimony of complainants to these payments. But a more complete answer to this claim exists. The bill of complaint recites the discovery by complainant of certain receipts from the building and loan association, an investigation, and the settlement and adjustment hereinbefore referred to, in which a release was given of all claims made by complainant against said association for money which he claimed to have paid the association on account of any and every loan or advance made to him by the association, and of any and every claim of every kind and character against said association growing out of his relations thereto. The only attack made upon this settlement is the complainants' claim that other facts and the fraud set forth in the bill were not then known to the complainants; and it is claimed on the hearing that the settlement only related to payments which aggregated $185, while, as a matter of fact, it is now claimed that something more than $800 had been paid and not credited.

We are satisfied from the record that other claims in excess of the claim of $185 were made at the time, and that this settlement was intended to be a final and definite settlement of all matters in controversy between the parties. It should be borne in mind that at this time a deficiency decree of $304.21 existed in favor of the association against complainants. At the time complainant claims to have discovered that he had not been credited

with all that had been paid by him, he had the means of ascertaining, as he has since ascertained, all the facts in relation thereto. The testimony of the witnesses who were members of the committee is to the effect that other claims than the $185 were in fact made. It was clearly the duty of the complainant to then assert whatever claims he had to make. There certainly was no fraud or artifice practiced by the association at this time. The payment was made upon the definite agreement that it should be final, and we think it should be so treated. It is suggested that the complainant Mary Dailey was not a party to this arrangement; but the answer to this is that the bill of complaint proceeds upon no such theory. On the contrary, it recognizes the settlement, and only attempts to avoid it by matters common to both Mr. and Mrs. Dailey.

The only other question which need be referred to is the alleged imposition of excessive fines. The total amount of fines imposed is stated to have been $131.43. It is not accurately shown to what extent these were excessive, but we think the question is open to the same considerations that the alleged overpayments are. After this decree had passed, and the error had been discovered, we think it was incumbent upon the complainants to make their claims once and for all, and that, when the receipt was given under the circumstances detailed, it constituted a complete accord and satisfaction. *Freeman* v. *Freeman*, 68 Mich. 28 (35 N. W. 897).

The decree of the court below will be affirmed, with costs.

The other Justices concurred.