RICHARDSON *v.* DETROIT & MACKINAC RAILWAY CO.

1. NEGLIGENCE—CARRIERS — CONTRIBUTORY NEGLIGENCE—RAILROADS —DIRECTED VERDICT.

Evidence, in an action for the unlawful killing of decedent, a passenger who was at a station intending to take a train of the defendant at night, *held*, to present an issue for the jury upon the alleged negligence of defendant railway company and the contributory negligence of the deceased. *Richardson* v. *Railway Co.*, 176 Mich. 413 (142 N. W. 832).

2. TRIAL—APPEAL AND ERROR—PRESUMPTIONS—JURY.

Unless the record indicates that the jury arrived at its verdict by an improper method, it will be presumed that the method was a proper one and that no irregular compromise was effected by the jurors in reaching the result, a verdict for plaintiff.

3. SAME—INSTRUCTIONS—COMPROMISE VERDICT.

It was not prejudicial error for the court to advise the jurors that the question of damages is necessarily a matter of compromise, or that it was a question of estimate; that verdicts in the class of· cases that was before the court were always the result of compromises; cautioning them that they should not, however, forego their honest opinions. If he meant by the word compromise mutual concessions in computing unliquidated damages in the class of cases in which the damages were unascertained, and the court will so presume on error, the charge was not objectionable when no claim was made that the verdict exceeded a reasonable amount and the point was not presented on a motion for new trial.

Error to Arenac; Sharpe, J. Submitted June 3, 1914. (Docket No. 13.) Decided July 25, 1914.

Case by Wallace B. Richardson, as administrator of the estate of Edith I. Barhite, deceased, against the Detroit & Mackinac Railway Company for the unlawful killing of decedent. Judgment for plaintiff. Defendant brings error. Affirmed.

*Henry, Henry & Henry (James McNamara,* of counsel), for appellant.

*B. J. Henderson (De Foe, Hall & Converse,* of counsel), for appellee.

STONE, J. This case is before this court for the second time. When first here, we made a very full statement of the facts involved in the case, and, to avoid needless prolixity here, we will refer to our former opinion for such statement. 176 Mich. 413 (142 N. W. 832).

It is sufficient to say that the plaintiff, as administrator of the estate of Edith I. Barhite, deceased, an unmarried woman, sued the defendant in an action on the case, alleging that his decedent came to her death on the night of June 22, 1911, through the negli-· gence of the defendant in the operation of its trains

at the village of Turner, Arenac county. When first here, the judgment was reversed for the reason that the trial court permitted the jury to base the damages awarded the plaintiff in part on the loss to a sister of decedent, as well as to the father and mother of decedent. The case was sent back for a new trial, which has resulted in a verdict and judgment for the plaintiff, and the defendant has again brought the case here for review, upon writ of error.

As stated by appellant, and as shown by a comparison of the two records, the testimony given on' the second trial did not substantially differ from that submitted upon the first trial, except with respect to the duty of plaintiff's intestate to contribute toward the sister's support, which was eliminated upon the second trial.

Counsel for appellant in their brief say:

"In view of the thorough and exhaustive consideration given by this court to the questions raised on the former trial, we shall refrain from discussing at this time assignments of error under the subdivisions made by the opinion of this court in their former decision designated as 1, 3 and 5. We do not think the evidence on the last trial discloses a situation which would warrant us in urging this court (1) that the defendant was free from negligence. Nor do we deem it proper for us to urge in the light of the opinion of this court that (3) the death of the plaintiff's intestate was conjectural, and on the second trial, the judge having eliminated the question of damages (5) with respect to the duty of plaintiff's intestate to contribute towards her sister's support, assignments of error relative thereto will not be urged at this time."

Counsel confine themselves to the discussion of the claimed errors, which they have grouped as follows:

*First.* Admission of evidence. *Second.* Negligence of plaintiff's intestate. *Third.* Errors in charge of court. *Fourth.* Errors in refusing to instruct the jury as requested. *Fifth.* Instructions of the court after the jury had retired.

1. We find no error in the rulings of the trial court upon the admission of evidence. We think that no new question is raised upon this branch of the case that warrants discussion.

2. Upon the subject of the claimed negligence of plaintiff's intestate, we must adhere to our former opinion that it could not properly be disposed of as matter of law, and that the question was properly submitted to the jury. Counsel for appellant reargue the question, but we must hold that our former ruling has, under the record, become the law of the case.

3, 4. As to the claimed errors in the main charge of the court, and in the refusals to charge as requested, we would be justified in saying, not only that they are not discussed by counsel, but their discussion is unnecessary for the further reason that each question raised was presented to, and passed upon, by this court at the former hearing. The same charge, with the exceptions noted, was given at both trials.

5. Instructions of the court after the jury had retired. The errors in this connection are raised by the twenty-fifth, thirty-first, thirty-second, and thirty-third assignments.

The record shows that after the jury had been out for a time, and on the morning of September 18, 1913, they were brought in, and the following occurred:

"*The Court:* Mr. Foreman, haven't you yet agreed upon a verdict?

"*Foreman:* No, sir; we have not, your honor.

"*The Court:* I do not want you to tell me particularly, but as nearly as you can, do you disagree upon the question as to whether or not the defendant is liable?

"*Foreman:* No, sir.

"*The Court:* You just disagree upon the question of damages?

"*Foreman:* Yes, sir.

"*The Court:* I am just inclined, gentlemen of the jury, to instruct you a little further upon that. My instructions yesterday were read to you, and perhaps I didn't get the law as clear as I might have. I am very loath to discharge you for a disagreement for such a reason. I will preface what I say by saying that the question of damages, where there is nothing excepting the judgment of the jurors to fix it on, is, of course, where 12 men have to make it up, necessarily a matter of compromise.   *   *   *   As I have said to you, it is a matter of judgment; it is a question of estimate; it is not a question that when you have rendered a verdict and agreed upon it, any of you can say: 'Why, I know that is just the right amount.' It is impossible to do that. It is a question of exercising your best judgment about it, and, as I suggested to you, I don't think it is improper for me to say to you that verdicts in this class of cases are always the result of compromises. Why, it wouldn't be possible to get 12 men who would agree and say our judgment is all the same upon that, because there are so many probabilities to take into consideration. *   *   *

"You have already deliberated a long time upon it, as long as we usually keep juries, but I am loath to discharge you in this case, and I do urge you, if possible, to try and get together upon a verdict. I don't mean by that that a juryman must forego an absolutely honest opinion and render a verdict that is contrary to his idea of fairness and right. But I do urge upon you that it is important to both of these parties, and if the question of liability is determined—and you say it is—that the question of damages should be determined by you and this litigation, so far as this court is concerned, should end."

After this supplementary charge, the jury again retired, and the record states, "Jury return in a few moments," and announced a verdict in favor of the plaintiff for $2,750 damages, upon which a verdict and judgment were entered.

The record does not disclose, as contended by counsel for appellant, that the jury had made any an-

nouncement that they were unable to agree, or that
they had asked to be discharged.  They seem to have
been called in by the court upon its own motion.  It
is the claim of appellant that this portion of the rec-
ord discloses that the verdict was not the result of
the united judgment of the jury, but was the result
of a compromise arrived at by the jury.  We doubt if
this claim is well founded.  It must be presumed, in
the absence of evidence, that the jury arrived at their
verdict by a proper method.  We think it may be
fairly inferred from the record that the verdict may
have been the result of the supplementary charge,
although it does not distinctly appear.  In stating that
part of the supplementary charge upon which error is
assigned, we have not set out all of such charge.
Much of the language used by the court is not even
criticised by appellant's counsel.  Much of the sup-
plementary charge was in the nature of caution to
the jury, and they were told that they must not forego
an absolutely honest opinion and render a verdict
that was contrary to their idea of fairness and right.

Much stress is laid by counsel upon the trial court's
use of the term "compromise," in fixing the amount
of damages.  In our opinion the expression was an
unfortunate one, but it has often been stated in the
books that in arriving at verdicts, where the damages
are unliquidated, the result is often reached by the
mutual concessions of individual jurors.  It is true
that it is often difficult for jurors to agree upon the
precise amount of unliquidated damages to which the
plaintiff is entitled; and we think that it was this that
the court had in mind in referring to "this class of
cases."  A reference to 38 Cyc. p. 1845, will disclose
the following language:

"Verdicts, it has been said, are often and properly
the result of mutual concessions.  Without something
of this kind 12 men can hardly be expected to come

to a unanimous conclusion upon any computation of unliquidated damages. Where, as is usually the case, there is a diversity of opinion as to the amount which ought to be given, the verdict must necessarily be the result of mutual concession, and the jury are bound to seek for a medium sum upon which their conflicting views may harmonize."

If, by the term "compromise," the trial court meant the mutual concessions above referred to; then the language would not be objectionable.

Our attention has been called to the following cases in this court bearing more or less upon the subject:

In *Pierce* v. *Rehfuss,* 35 Mich. 53, after the jury had retired to deliberate and had been out five hours, they returned into court and announced their inability to agree upon a verdict. Justice MARSTON said:

"The court thereupon further instructed the jury as to their duty in endeavoring to reconcile their views and arrive at a verdict, if consistent with their consciences, rather than that the parties should be put to the trouble and expense of trying the case again; and this is complained of upon the ground that the court should not charge the jury the second time, after they return into court and say they cannot agree, unless they ask for further instructions on some point, and that the court should not urge the jury to agree, nor make any remarks to the prejudice of either side. This last, of course, the court should not do, and nothing in this case was said to the prejudice of either party, unless calling the attention of the jury to the propriety of their reconciling all differences of opinion, so far as they conscientiously could, and agreeing upon a verdict can be so considered, which we think cannot. It is usually for the interest of both parties, or at least should be, that when a case has been fairly tried and submitted upon the merits to a jury, they should agree and thus put an end to the controversy; and the court, in thus instructing the jury, was but acting in the performance of a highly commendable duty, and this irrespective of the fact whether the jury had asked for further instructions or not."

The judgment of the lower court was affirmed.

In *Goodsell* v. *Seeley*, 46 Mich. 623 (10 N. W. 44, 41 Am. St. Rep. 183), suit was brought against a physician for malpractice in setting plaintiff's arm. The record discloses that, after the jury had retired, they returned into court and informed the judge that they had not agreed, but "stood eleven to one, and divided on $200." The judge thereupon told them:

"If that is the only difference, it would be better for the county and the parties on both sides that one or both sides yield so as to come together. It would be unfortunate for all to have a disagreement when the difference is so small."

And he asked them to get together if possible. In reversing the judgment, Justice COOLEY, speaking for this court, said:

"It is no doubt true that juries often compromise in the way here suggested, and that by 'splitting differences,' they sometimes return verdicts with which the judgment of no one of them is satisfied. But this is an abuse. The law contemplates that they shall, by their discussions, harmonize their views, if possible, but not that they shall compromise, divide, and yield for the mere purpose of an agreement. The sentiment or notion which permits this tends to bring jury trial into discredit and convert it into a lottery. It was no doubt very desirable to the public and to the parties that the jurors should agree if they could do so without sacrificing what any one of them believed were the just rights of the parties, but not otherwise."

In *Kelly* v. *Emery*, 75 Mich. 147 (42 N. W. 795), the action was assumpsit brought to recover the balance claimed by plaintiffs to be due them, under a written contract, for building a schooner for defendants and for extra work and material thereon. The defendants, with their plea of the general issue, gave notice of several matters of defense, including that of

defective construction, delay in completion, etc. In the course of its charge to the jury the court said:

"This case has already been tried once, and the amount involved is not very large, and the parties cannot afford to litigate it forever, and the county cannot afford to have them do it. You see it takes some time to try the case, and I hope you will be able to arrive at a conclusion, and settle the facts in the case, at least."

It was claimed that by this charge the jury were coerced into finding a verdict. Speaking for this court, Justice LONG said:

"This statement by the court could not have had any such effect. It was simply an admonition to the jury to agree, if possible, upon the facts of the case, and one which the court might very properly make.

"It appears that the case had once been tried, and on that trial the jury failed to agree, there being such a conflict of testimony.

"We do not see how this portion of the charge affected the verdict or had any influence in favor of or against either of the parties.

"It was important in that, as in other cases, the jury settle the disputed questions of fact arising on the trial; and the court, without intimating its opinion of the facts upon this part of the case, advised the jury that it was for the best interests of the parties, and would save costs to the county, if they could in that trial settle the facts in the case. No one could be prejudiced by this portion of the charge."

In *Benedict* v. *Provision Co.*, 115 Mich. 527 (73 N. W. 802), the action was assumpsit for work and labor performed. From a judgment for the plaintiff, the defendant appealed, and the question involved was one of the amount of the indebtedness. At the conclusion of the evidence, and after the charge of the court, the attorney for the plaintiff said:

"Inasmuch as your honor has told the defendant's claim, probably the jury ought to know that the plain-

tiff's claim is $588.83; there is no dispute about that, if he is entitled to recover at all."

To which the court replied:

"I suppose the jury know about that."

The jury returned a verdict of $398.77. Counsel for the defendant made a motion for a new trial upon the ground that the verdict was a compromise verdict, and therefore illegal, which the court overruled. Speaking for a majority of the court, Justice MONTGOMERY said:

"The principal question presented in this case is whether the verdict rendered should be set aside on the ground that it is a compromise verdict. There is no doubt that, where the record is such as to make it clear that the jury have reached the result by 'splitting differences,' neither party has had the benefit of their judgment, and such verdict ought not to be permitted to stand. See *Goodsell* v. *Seeley*, 46 Mich. 623 [10 N. W. 44, 41 Am. St. Rep. 183]. But this is quite a different proposition than the one suggested by the facts of this case, which is that, because the jury gave a verdict for a less sum than the plaintiff's testimony showed him entitled to, the defendant has the right to complain, and to insist that the verdict was reached as a compromise. The inference is not a necessary one from the premises. The verdict for the less amount may have been the result of a mistake in computation, or it may have been that the jury, on their own judgment, considered portions of plaintiff's testimony inherently improbable. It certainly does not appear in this case, as it did in *Goodsell* v. *Seeley, supra,* that the verdict was the result of a compromise."

We are not prepared to say that the defendant was prejudiced by the language of the court, and the plaintiff should not be penalized by such language, unless we are satisfied that the defendant was prejudiced by the use thereof. Had the court said to the jury that it was their duty, in so far as it was consistent with their consciences, to try to get together in agreeing

upon the amount of damages to be awarded the plaintiff, we do not think there would be any just criticism. We are not able to say from this record, as the court was able to say in *Goodsell* v. *Seeley, supra,* that the verdict was the result of a compromise, or that an attempt was made to induce a change of views against the judgment of the jurors.

There was no motion for a new trial; and there is no claim that the damages are excessive. It is only claimed for the verdict that it was substantially a verdict reached by the jury by "splitting differences," and in this claim we are not able to agree with counsel for appellant.

The judgment of the circuit court is affirmed.

McALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.