POOL v. TOWNSHIP OF MONTAGUE.

1. EVIDENCE—OPINION EVIDENCE — HIGHWAYS AND STREETS — MUNICIPAL CORPORATIONS.

In an action against a township for personal injuries alleged to have been caused by a rut at the approach to a bridge, where a witness had described the depression, his opinion as to whether it was an ordinary or extraordinary

one was of no consequence and was properly excluded by the court below.[1]

2. MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.

Where plaintiff was injured by being thrown from a wagon on which he was riding, seated upon a bunch of shingles loosely placed on top of a load of lumber, the alleged cause of the accident being a depression in the road at the approach to a bridge, of which defendant township's officers had actual notice, the questions of defendant's negligence and plaintiff's contributory negligence were properly submitted to the jury.

3. TRIAL—DAMAGES—INSTRUCTIONS.

The refusal to give requested instructions to the jury as to plaintiff's damages for loss of time, where the court had sufficiently covered the requests in his general charge, was not erroneous.

4. SAME—SYMPATHY—INSTRUCTIONS.

While language used by the court, in his charge to the jury, on the question of sympathy, was not exactly clear, where the court evidently intended the jury to understand that in reaching a verdict they were not to be governed by sympathy, such instruction was not erroneous.

5. DAMAGES—EXCESSIVE VERDICT—APPEAL AND ERROR.

Where plaintiff's physician testified, in a suit for personal injuries, that plaintiff would be a cripple for life, a verdict for $1,500 cannot be said to be so excessive as to result in a miscarriage of justice, even if the charge of the court on the subject of sympathy was erroneous; no motion for a new trial based upon that ground having been made.

Error to Muskegon; Sullivan, J. Submitted October 11, 1916. (Docket No. 127.) Decided December 22, 1916.

Case by David O. Pool against the township of Montague for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

---

[1] On evidence in action against township for injury by defect in highway, see note in 13 L. R. A. (N. S.) 1244; L. R. A. 1916A, 1218.

*Harris E. Galpin* and *Charles B. Cross*, for appellant.

*Turner & Turner*, for appellee.

On May 14, 1914, plaintiff, who lived in the village of Fruitvale, went to Montague, a distance of about seven miles, for the purpose of securing a load of lumber. His road led him over Carleton Creek bridge, distant about a mile and a half from his home at Fruitvale. For the purpose of transporting the lumber, he hired one Fred Nordhoff with his team. Plaintiff and Nordhoff left Fruitvale between 7 and 8 o'clock in the morning and passed over the bridge in question going west shortly thereafter. The wagon had no box, and plaintiff and Nordhoff on the trip west rode upon the hounds near the rear axle. Both testified that on this trip they noticed no particularly bad hole at the easterly approach of said bridge. After loading the lumber at Montague, Nordhoff sold one of his horses and another was secured to take its place. Nordhoff also arranged for his cousin, likewise named Nordhoff, to drive plaintiff and the load of lumber back to Fruitvale. The load of lumber consisted of 400 or 500 feet of stuff which was piled between the upright standards of the bolsters. On top of this lumber there was placed several bunches of shingles. Two of such bunches were placed within about 3 feet of the front end of the load, and plaintiff sat on the bunch on the left-hand side and the driver, Nordhoff, on the bunch on the right-hand side. Approaching the Carleton Creek bridge from the west, the road runs down a considerable hill to the bridge. No difficulty was encountered in getting upon the bridge, but, as the team crossed over the bridge and the front wheels left it, the plaintiff's claim is that they dropped into a hole between 12 and 16 inches deep. This sudden dropping of the front end of the wagon caused plain-

tiff and Nordhoff to be both thrown forward and off of the wagon. Plaintiff landed upon his feet between the whiffletree and the heels of the near horse, and Nordhoff was thrown to the ground in front of the right front wheel. Some of the shingles followed the passengers. The team became frightened and started forward running and kicking. Plaintiff, having secured the lines, succeeded in drawing the team to the left side of the road upon the soft ground, where they were finally stopped about 50 feet from the bridge. Probably as a result of a kick the plaintiff suffered a compound fracture of his right kneecap. He was taken to his home in Fruitvale, where he received the attention of a physician and was confined to his bed upwards of 20 days, when he got out on crutches. The physician who attended him testified that the kneecap had not joined and that the plaintiff would remain a cripple for the rest of his life.

The plaintiff introduced considerable testimony besides that of himself and the driver, Nordhoff, to the effect that the hole at the easterly approach of the bridge was at least a foot deep and was located immediately where the planks of the bridge stopped. There was testimony on behalf of the plaintiff to the effect that the defect in the highway at this point had existed for a long period of time and that the township officers had received actual notice of it.

On behalf of defendant much evidence was introduced tending to show that the hole or depression at the easterly approach of the bridge was not to exceed 4 or 5 inches in depth, and that the point of greatest depression was about 18 inches from the eastern end of the bridge. At the close of the testimony, the defendant moved for a directed verdict on the ground that the plaintiff was guilty of contributory negligence as a matter of law: *First,* for riding over a road, such as the record discloses the one in question to be, upon

a bunch of shingles loosely placed on top of a load of lumber. *Secondly,* that inasmuch as the accident happened at 3 o'clock in the afternoon in broad daylight, the plaintiff or his employee, Nordhoff, if they had exercised reasonable care and prudence should have discovered the depression at the easterly approach of the bridge in time to have avoided it. This motion was denied, and the case was submitted to the jury upon the questions of defendant's negligence in the care of the highway and plaintiff's contributory negligence. Plaintiff secured a verdict for $1,500.

BROOKE, J. (*after stating the facts*). The first nine assignments of error are based upon alleged errors in the exclusion of testimony. The character of the testimony covered by these assignments may be illustrated by the following: The highway commissioner of the defendant township, having described the rut at the easterly approach, was asked:

"*Q.* I mean whether it was anything more than the ordinary rut that you find on the approach to a bridge of that kind?"

His answer was excluded, and it is strenuously urged on behalf of the defendant that the jury had a right to be informed by the witness as to whether or not the hole was of the character complained of, or whether it was just an ordinary rut to be found on a road of that kind. Another witness was prevented by the ruling of the court from stating in what respect the approach at the Carleton Creek bridge differed from the ordinary approaches to culverts and bridges on country roads in general. In urging the admissibility of the testimony offered, counsel for defendant says:

"Knowledge of the proper or best methods of building roads is not among the presumable accomplishments of average jurors. It cannot be said that the average juror is well acquainted with country roads

in general or with the building of approaches to bridges along country roads."

The court was unquestionably correct in excluding the testimony in question. Having described the depression, the opinion of the witnesses for defendant as to whether it was an ordinary or extraordinary depression was of no consequence. It was for the jury to determine, having heard all the testimony, whether the road was reasonably fit and safe for public travel. The remaining exceptions based upon alleged errors in the exclusion of testimony are of the same character and are without merit.

It is likewise urged on behalf of defendant that the court erred in overruling the motion for a directed verdict on the ground that the plaintiff by himself or his driver was guilty of contributory negligence. We are of opinion that the motion was properly denied.

There was evidence on behalf of plaintiff that the load of lumber and shingles was carried in the usual and ordinary way for such a load, and there was no testimony on behalf of defendant to the effect that plaintiff's actions under the circumstances were negligent. We think the question was one for the jury, and we find it was submitted to the jury under a very careful and painstaking charge. Upon this point the court said, in part:

"No matter how negligent you may find the township to have been, and no matter how defective you may find the easterly approach to the bridge in question to have been, yet, if the plaintiff or the driver of the team was guilty of any negligence that contributed in any degree to the plaintiff's injury, he cannot recover. In that connection it is proper for you to take into consideration everything disclosed by the evidence in relation to the accident, to how the plaintiff drove over the bridge in question in the morning, the condition of the bridge at that time, what knowledge he

had of its condition, either from driving over it in the morning of that day or from any other time that he may have traveled upon it. You have also a right to take into consideration the time when the accident actually did occur, the time of the day at which it was, the nature of the load that he was bringing from Montague to his home, the lumber and the shingles, and all the other facts and circumstances in connection therewith, to say· and to determine whether the plaintiff himself was guilty of contributory negligence."

Errors were assigned upon the refusal to give defendant's second and third requests to charge. The second request was clearly covered by that portion of the charge above quoted. The third request was as follows:

"I further charge you that there is no testimony in this case tending to show the earning capacity of the plaintiff either before or after the time of the injury complained of, and you have no right to take his earning capacity into consideration in arriving at a verdict."

In the course of the charge relating to the measure of damages the court said:

"He is not entitled to recover anything because of any loss of time, for the reason that there is no proof in the case as to the value of his time from·which you could compute any amount of damages because of that loss."

This language we think sufficiently covers the defendant's third request.

Error is also assigned on the following excerpt from the charge:

"Something has been said about sympathy, about the word 'sympathy.' That has been used, and both parties have said they don't want the case decided upon sympathy. That is so; that is right; that is right. Nobody can see another man—no human being scarcely, no right made human being, can see another man

that has suffered a great injury without feeling for him, without pitying his condition, and his pity and feeling is called sympathy; but in this kind of a case, gentlemen, in a case like this, why, we can't get rid of that sympathy. I wouldn't have you do it if you could. We can't do it, but still that is not to decide the case, gentlemen. There are other things. There are other things that must be used by a jury, and that is a sense of justice, the evidence in the case, the equality of the law must be supported in every case, and then when you have done your duty and according to your sense of justice, according to the weight that you give to the evidence, why, then you have done all that the law requires of a man."

While the language here used by the court is not exactly clear, we are disposed to the view that the court intended the jury to understand that in reaching a verdict they were not to be governed by sympathy. Other portions of the charge which is not necessary to quote support this view. While it is intimated in the brief of counsel for defendant that the verdict was excessive, and that such excess was superinduced by this portion of the charge, no motion for a new trial was made based upon that ground. Considering the character of the injury received by plaintiff and the amount of the recovery, we are unable to say that the charge, even if erroneous in the respect claimed, brought about any miscarriage of justice.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. PERSON, J., did not sit.