McINTYRE *v*. TOWNSHIP OF GRANT.

1. Municipal Corporations—Townships—Highways and Streets
   —Personal Injuries—Notice—Statutes.

   Section 8, Act No. 301, Pub. Acts 1915 (1 Comp. Laws 1915,
   § 4591), requiring the filing of a claim in writing within
   60 days from the time of the happening of any injury
   caused by the defective condition of a highway, is limited
   in its provisions to "any city or incorporated village of
   this State where written notice of such injury and defect
   is now required by law to be served upon such village or
   city before recovery can be had," and does not apply to
   townships.[1]

2. Same—Contributory Negligence.

   In an action against a township for personal injuries caused
   by plaintiff's team going into a hole in the highway,
   where there was testimony that plaintiff and his sisters
   had safely passed by the defective spot earlier in the
   evening by following the tracks, but that when they re-
   turned a recent fall of snow had obliterated the tracks
   and covered the hole, and although he had the defect in
   mind, he misjudged the distance and the injury occurred,
   the question of plaintiff's contributory negligence was
   properly submitted to the jury.

3. Same.

   Where the location of the hole in the highway was in dis-
   pute, plaintiff testifying that it was in the traveled por-
   tion thereof, and defendant's witnesses placing it by meas-
   urement at various distances therefrom, an instruction by
   the court in relation thereto that "In this connection you
   should take into consideration the date of observation
   when estimates are testified, and the time at which the
   measurements were made, and determine whether or not
   changes have been made in the location," *held*, not preju-
   dicial to defendant's claims.

4. New Trial—Weight of Evidence—Excessive Verdict—Dam-
   ages.

   Where there was abundant evidence to support the plain-
   tiff's claim as to how the accident happened, and also as
   to the extent, seriousness, and permanency of his injuries,

---

[1] On notice of claim for injury as essential to liability of town
for injury by defects in highway, see note in 13 L. R. A. (N. S.)
1228.

*held,* that the verdict for $5,000 damages was not against the weight of the evidence, and was not excessive.

Error to Huron; Beach, J. Submitted April 11, 1919. (Docket No. 36.) Decided May 29, 1919.

Case by Archibald D. McIntyre against the township of Grant for personal injuries caused by a defective highway. Judgment for plaintiff. Defendant brings error. Affirmed.

*X. A. Boomhower,* for appellant.

*George M. Clark,* for appellee.

KUHN, J. Plaintiff and his two sisters, Mrs. Euphemia Hunter and Miss Mary McIntyre, had spent the evening of January 24, 1917, at the home of a neighbor, John Allison, on his farm in Grant township, Huron county, and about half-past twelve that night started to drive, with team and cutter, to their father's farm in the same township, where they resided. It had been snowing and storming during the evening and continued to snow a little during their return trip. Their way led past a "four corners" known as the "hogsback," which they approached from the north. From the corner north for about 115 feet the gravel had been dug out, forming a sort of basin with banks 12 feet high in places. On the west side of the north and south highway over which their course lay, and just north of the north boundary of the east and west cross road, was a hole about 12 feet long, north and south, 9 feet wide, and 3 feet deep. There is a dispute in the testimony as to its exact location with reference to the traveled portion of the highway, the plaintiff claiming that it extended into the same about the width of the wagon tracks, that is, four or five feet, while the defendant claimed it was entirely outside the traveled portion of the road, some

On excessiveness of verdict for personal injuries other than death, see comprehensive note in L. R. A. 1915F, 30.

of the witnesses placing it as far as 12½ feet away. It was admitted that this portion of the highway belonged to the defendant township. Plaintiff and his sisters knew of the existence of this hole, and had passed by it safely on their way over to Allison's earlier in the evening, at which time both the plaintiff and Mrs. Hunter had been able to discern it, though not till they were nearly opposite it, because of the darkness and the covering of snow. Plaintiff was then able to avoid it by following the sleigh tracks, still visible, which formed a sharp jog or elbow as they turned around the hole, passing within a foot and a half or two feet of its edge. On the return trip the sleigh tracks in the road were entirely covered with the fresh snow, and as they approached the top of a hill near the cross roads, Mrs. Hunter urged plaintiff to be sure and watch for that hole. At that time the horses were going at quite a brisk trot. Near the top of the hill plaintiff began to slow the team down and continued to slow them until, just as he was about to make the turn around the hole as he estimated its location, the team went into it, taking the cutter with them. The occupants were thrown out, the horses broke loose from the cutter and dragged plaintiff by the lines a distance of about five rods. When he fell out of the cutter, his back and hip struck against the side of the hole, and when the horses stopped he was unable to get up for a while, but soon was able to go some 60 rods to a neighbor's, who took them home in his sleigh. Plaintiff felt pain in his back and hip that night, and the next morning Dr. Morris, of Cass City, was called, who put some adhesive tape on plaintiff's back and gave him some medicine. Plaintiff remained in bed till February 6th. Plaintiff saw Dr. Herrington in February, who took off the adhesive tape and put on some more. Plaintiff and his father

were at the meeting of the township board of Grant township on March 19, 1917, and made a demand for $1,000. There is some dispute as to the account plaintiff then gave of the accident. Plaintiff and his father also met the township board at the hogsback on March 26, 1917, and plaintiff showed the board the hole where he claims to have been injured. Upon election day, in April, plaintiff was at the town hall, and his claim was taken up there. The hall was full of people, and there is a dispute as to what plaintiff then said as to the manner of his injury. On April 4th plaintiff removed the adhesive tape and went to visit an uncle, who lived in Canada about 30 miles from Sarnia. On April 8th his uncle took him to Dr. Axford, of Alverson, who put adhesive tape on his back. On April 10th plaintiff and his uncle came to Detroit and consulted Dr. McAlpin. Three X-ray photographs were taken of his back and hip, and plaintiff was put into a plaster of paris cast and remained at Harper Hospital until April 21st. He then returned to his uncle in Canada and remained till the 16th or 17th of May, when he returned to Detroit and Dr. McAlpin put belts on him. He returned to Canada, remained till June 3d, when he again came to Detroit and had another X-ray taken. He seemed considerably improved. The doctor told him to wear the belts and follow the instructions of Dr. Morris, of Cass City. He felt better for a time, but in July Dr. Morris found it necessary to put adhesive tape on him, and in November he again went to Detroit, where another X-ray examination was had and plaintiff was again put in a plaster of paris cast at Harper Hospital. The cast was on until about the first of March, though he had returned home in the meantime. In March he returned to Detroit and a new cast was put on, which he was wearing at the time of the trial of this suit, which plaintiff had in the meantime brought against the township for his injuries.

At the close of plaintiff's proofs, defendant moved for a directed verdict, but the motion was denied. After putting in its evidence, defendant renewed the motion, which was again denied, and the case was submitted to the jury, who returned a verdict of $5,000 in plaintiff's favor. A motion for a new trial was also denied, and the case is now before us on writ of error.

Defendant's motions for directed verdict were based upon two grounds:

*First.* Because the plaintiff had failed to file a claim with the township board, or any of its officials, for his injuries.

*Second.* Because the accident was caused or produced by the contributory negligence of the plaintiff.

1. Under its first assignment of error, defendant contends that section 8 of Act No. 301, Pub. Acts 1915 (1 Comp. Laws 1915, § 4591), requires the filing of a claim in writing with the township board within sixty days from the time of the happening of any injury caused by the defective condition of a highway. The provision of the statute referred to is, however, by its terms limited to "any city or incorporated village of this State where written notice of such inquiry [injury] and defect is now required by law to be served upon such village or city before recovery can be had." It does not apply to townships.

2. The assignments of error which are argued most fully in the briefs of counsel and which seem to raise the principal question in the case, are those relating to the question of plaintiff's contributory negligence, it being the contention of defendant that the court should have directed a verdict in its favor on the ground that, under the evidence, plaintiff was shown to be guilty of contributory negligence as a matter of law. In his brief defendant's counsel states:

"In this case the plaintiff knew

"(1) The exact location of the hole;

"(2). He had the defect in mind;

"(3)' He knew the track was within 1½ to 2 feet from the hole when he went over five hours before;

"(4) He knew there was a sharp turn to be made when he came to the hole;

. "(5) He knew upon his return that the track and everything was filled up with snow so there was nothing to guide him;

· "(6) He knew there was a safe way around the hogsback;

"(7) He knew the exact distance he was from the hole when he arrived at the top of the last hill;

"(8) He knew the team would arrive at the hole first;

"(9)' He knew he could not see the hole until he got 'right up to it';

"(10) He knew the hole was dangerous.

"Knowing all these things, Mr. McIntyre continued to trot the team right down into the basin at the hogsback and attempted in the dark to guess the exact spot where he was to pull his horses eastward to avoid destruction. * * * Under these circumstances, was not plaintiff guilty of contributory negligence precluding a recovery by trotting his team until they struck the hole? Can he excuse himself by saying, 'I misjudged my distance?' "

We think, however, that the action of the circuit judge in submitting the question of plaintiff's contributory negligence to the jury was correct. The question has been before this court many times in cases involving similar situations, and we have held almost uniformly that the question is one for the jury. These decisions will be found collected in the opinion of Mr. Justice BIRD, speaking for this court, in *Sherman* v. *Power Co.*, 199 Mich. 543, at page 548. In the *Sherman Case* it was held that the question of contributory negligence was for the jury, notwithstanding the fact that the plaintiff there, in the day time, drove into a trench or depression in a city street, the existence of which was well known to him, and which he had in

mind, his explanation being that his attention was momentarily diverted to his horses, one of which was frightened by some approaching automobiles. These facts would seem to present a stronger case of contributory negligence than those in the case before us. A state of facts resembling more closely those here involved will be found in *Sias* v. *Village of Reed City*, 103 Mich. 312 (cited in the *Sherman Case*), from which we quote the following:

"The plaintiff testified, in substance, that the injury occurred about 9 o'clock in the evening of the 9th of April, 1893. The night was dark and stormy. Plaintiff, with two other ladies, had been to make a call, and she received the injury on the return trip. She knew of the fact that there was a bad place in the walk, and had spoken about it to the young ladies with her on the way over. On their way back it was snowing somewhat, striking them in their faces. The plaintiff again called the attention of the ladies with her to the defective place in the walk, saying: 'We will have to look out for that bad place in the walk.' It snowed a little harder coming back than on the way over. The plaintiff was walking on the outside of the walk, and the other two girls on the inner side. They walked somewhat rapidly in that way, without changing positions, until the plaintiff stepped into the defective place and received the injury. The plaintiff testified:

" 'It was not so dark but what one could see the Gabel house if he was looking for it. I was paying attention to the defect in the sidewalk as I came back, watching for it; but I got to it sooner than I expected.'

"Defendant's counsel strenuously insists that this evidence conclusively showed contributory negligence. But we think the case is ruled by the previous decisions of this court. * * *

"The case of *Lowell* v. *Township of Watertown*, 58 Mich. 568, is directly in point. Mr. Justice CHAMPLIN, speaking for the court, said:

" 'The defendant's counsel claim that his (plaintiff's) knowledge of the defect, and his having it in his mind at the time,

was conclusive evidence of his want of ordinary care in stepping into the very hole he had it in mind to avoid; and that for this reason the case should have been taken from the jury. We cannot accede to this view. A person is not necessarily precluded from recovering for an injury caused by a defect in a highway simply for the reason that he was aware of such defect; but this fact, with all others, is proper to be taken into consideration by the jury in determining whether, under all of the facts and circumstances, he was guilty of such carelessness or negligence without which he would not have been injured.' "

The above case involved every essential feature of the case at bar—the darkness, the snow, a trip made safely past the danger spot earlier in the evening, a warning on the return trip to be on the lookout for the defect, the continuing at a rapid gait right into the hole, a knowledge of the exact location of the spot, and a misjudging of the distance. The case of *Harris* v. *Township of Clinton*, 64 Mich. 447 (8 Am. St. Rep. 842), is, in some respects, also in point. There plaintiff's bailee, in daylight, drove off the edge of an unguarded embankment close beside the submerged highway, into deep water, the road having become more deeply submerged by the rising water on his return trip than when he passed the spot earlier in the day. In the course of the opinion it was said:

"It should be remembered that the risk of driving off the embankment when obscured by the overflow of water was no greater than the risk of driving off on a dark night. In one case the vision is obscured by water, and in the other by darkness; and it would hardly be claimed that it would be negligence *per se* to attempt to drive over this portion of the highway on a dark night. Whether it would be negligence in a particular instance would depend upon all the facts and circumstances, which should be submitted to the jury."

In the instant case the covering was snow instead of water, and there was the added difficulty of the darkness. We are unable to distinguish this case from

those above referred to.  The question of contributory
negligence was properly submitted to the jury.

3. The learned trial judge, in charging the jury
with reference to the value to be placed on certain
testimony, said:

"In determining the location of the hole in question
as testified to by the several witnesses, you are to take
into consideration their opportunities for observation,
their source of information and means of obtaining
the same.  And, other things being equal, the testi-
mony of a witness as to location and distances based
on actual measurements, should prevail over the tes-
timony of a witness based on mere estimate or opin-
ion.  But in this connection you should take into con-
sideration the date of observation when estimates are
testified, and the time at which the measurements
were made, and determine whether or not changes
have been made in the location."

It is now urged that the latter part of this charge
beginning with the words, "But in this connection,"
was improper, because it is claimed that the plain-
tiff testified that during the months of March and
April the road was in the same condition as in the
fall before, except for the snow, and that in view of
this testimony, the court improperly limited the charge
as above set forth.  We are not impressed that there
is any merit to this contention for the reason that the
claim of the plaintiff and his witnesses was that the
hole in question was right in the traveled part of the
road, that it was dug where the rigs were traveling,
and after it had been dug there was a sharp elbow
about the hole and that if a person drove straight
down the road, he would drive right into the hole.
The measurements of the defendant's witnesses all
relate to the distance that the hole was from the trav-
eled portion of the highway.  It can be thus readily
seen that there was a sharp dispute as to the location
of the hole.  The plaintiff's testimony, to which our

attention is called in this regard, to the effect that the road was in the same condition in March and April as it was in the fall before, undoubtedly referred to his claim that the hole was still in the traveled portion of the highway, as he had before testified. We think, taking the judge's charge upon this question as a whole, it was not prejudicial to the defendant's claims.

Numerous other assignments of error relate to the charge. We have read it with some care and find, considering it in its entirety, that it clearly submitted the questions at issue with proper instructions.

5. In denying the motion for a new trial, the trial court said:

"In the opinion of the court, the verdict is not against the weight of the evidence and is not excessive, if the physicians' testimony is entitled to any credit."

With this conclusion we are in accord, because, if the plaintiff's witnesses are to be believed, there was abundant evidence to support the plaintiff's claim as to how the accident occurred and also as to the extent, seriousness and permanency of his injuries.

Because of these conclusions, it follows that the judgment must be, and is, hereby affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, FELLOWS, and STONE, JJ., concurred. BROOKE, J., did not sit.