VINTON *v*. TOWNSHIP OF PLAINFIELD.

1. MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—TOWNSHIPS
   —NEGLIGENCE—QUESTION FOR JURY.
   In an action against a township for personal injuries alleged to have been received by reason of defendant's negligence in maintaining the highway in a reasonable state of repair under section 4586, 1 Comp. Laws 1915, testimony *held*, to present a question of fact for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE—RIDING ON DEFECTIVE HIGHWAY—QUESTION OF LAW.
   It cannot be said that plaintiff was guilty of contributory negligence, as a matter of law, because he rode down a hill, on a defective highway, upon a load of straw, since the highways are made for farmers as well as others.

3. SAME—TRIAL—INSTRUCTIONS—CONTRIBUTORY CAUSES.
   Where plaintiff used no breeching on his horses, and the

On the question of burden of proof of contributory negligence in action against township on account of defects in highway, see note in 13 L. R. A. (N. S.) 1219.

testimony as to the need of same was very conflicting, instructions by the court to the effect that the lack of breeching would not be important unless the jury found that it was one of the contributory causes of the injury, *held*, not misleading because negative.

4. SAME—IMPUTABLE NEGLIGENCE.
    Negligence of the son, who was driving the team, would be imputable to plaintiff, who was riding on the load.

5. TRIAL—OPINION OF TRIAL COURT—CREDIBILITY OF WITNESSES—INSTRUCTIONS.
    It is not for the trial court to intimate that an interested witness might not be truthful and accurate, or to express an opinion as to which witness was entitled to credence, in his instructions to the jury, where the conflict in testimony was very sharp.

6. SAME—URGING JURY TO REACH VERDICT.
    Where the jury returned for further instructions, after having been out for a long time, the court was not in error in instructing them that it was desirable for them to reach an agreement if they could do so without violating their convictions and judgments, that they should reason together and it was just possible they might arrive at a verdict.

7. SAME—CONFLICTING TESTIMONY—QUESTIONS FOR JURY.
    Where the case was full of conflicting testimony upon the controlling facts, *held*, that it was properly submitted to the jury.

Error to Kent; McDonald (John S.), J. Submitted October 28, 1919. (Docket No. 104.) Decided December 22, 1919.

Case by Simeon Vinton against the township of Plainfield for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Cornelius Hoffius* and *Fred P. Geib*, for appellant.
*M. Thomas Ward*, for appellee.

MOORE, J. This is an action brought to recover

for the negligence of defendant in failing to keep a public highway in a condition reasonably safe and fit for travel, resulting, as plaintiff claims, in injury to him. From a judgment for $850 in favor of the plaintiff, the case is brought here by writ of error.

The assignments of error may be divided into three groups:

(1) The refusal of the judge to direct a verdict in favor of the defendant.

(2) Refusal to charge as requested by defendant, and error in the charge as given.

(3) Error when the jury returned for further instructions, and in keeping the jury out unreasonably long.

1. It is said the defendant should have had a directed verdict because the record fails to show any actionable negligence on the part of the defendant. The statutory duty imposed upon townships to keep their highways in reasonable repair and convenient for public travel is found in section 4586, 1 Comp. Laws 1915. When the accident occurred to the plaintiff he was riding on a load of rye straw which witnesses say would weigh twelve to fifteen hundred pounds. The straw was on a hay rack, and to keep it in place ropes led from the four corners of the rack over the straw toward the center of the load where a binding pole was thrust through the rope and twisted until the ropes were drawn taut. The highway led down a hill over a high fill or embankment, then up another hill. The team was driven by a son of the plaintiff. It was claimed that the rains following down each hill made washouts or dips at the sides of the traveled portion of the road, and down the embankment.

It was claimed by the plaintiff that while going down the hill which slopes easterly on the highway, his son was using particular care in driving, and that

when the wagon reached the "dip" which existed in the left hand wheel track, the front wheels chucked toward the north and swung the team slightly to the north; that the front wheel and the rear wheel ran off the graveled portion of the highway; that the son pulled the team back to the south; that the front wheel came up on the gravel, the hind wheel grinding along the side of the gravel did not come back upon the road; that about six feet east of the dip, the hind wheel settled into the hole by the side of the graveled portion of the road; that part of the load tipped off and precipitated the plaintiff down over the embankment and as a result the plaintiff sustained a broken leg and injuries in and about the spine, which have caused the plaintiff to be permanently disabled. Considerable testimony was introduced tending to sustain the claim of the plaintiff. There was a sharp conflict of testimony in reference to the condition of the road at the place of the accident. The witnesses of the defendant maintaining that there was no hole beside the traveled portion of the highway; that there was no dip in the track west of the place of the accident, but that the accident was caused because of poor loading of the straw, which, with some assistance of the wind, made the load slip off at the place of the accident.

The charge was a long one, and in it appeared the following:

"If after consideration of the evidence you find that the defendant was not guilty of any negligence which was the proximate cause of plaintiff's injuries, you need not further consider the case. That is, if you find that the defendant did perform its statutory duty to make and keep that road in a reasonably fit and safe condition for public travel, then you need not further consider the case for, if you find that the defendant did make and keep the road in a reasonably safe and fit condition for public travel, it was not negligent, and, if it was not negligent, the plaintiff cannot recover.

"If, on the other hand, you find that the defendant was guilty of negligence, that is, it did not make and keep the road in a reasonably safe condition for public travel and that such negligence was the proximate cause of the injury, the plaintiff can recover providing he himself or his son were not guilty of any negligence which contributed in any degree to the injury; and that will bring you to the consideration of the second element of the plaintiff's case, namely: Was the plaintiff himself or by his son guilty of any negligence which contributed to his injuries? Such negligence we call contributory negligence.

"The law requires that a party claiming to be injured by the negligence of another must show that he himself was free from negligence that contributed to the accident. It must appear that he used ordinary care for his own safety. In this case if the young man who was driving the team was negligent, his negligence would be imputed to his father, the plaintiff. So, in determining whether the plaintiff was negligent, you will also consider if the son was negligent. Both knew of the condition of that road, and the law would require of them that they use care commensurate with the dangers known to them. The question is, Did the plaintiff or his son, knowing the condition of the road, use such care as men of ordinary prudence would have used under the same or like circumstances?"

We shall not attempt to set out the testimony in detail as to the condition of the highway. We think it presented a question of fact for the jury under proper instructions, which we think were given.

It is the further claim of defendant that the plaintiff was guilty of contributory negligence as a matter of law, in riding down the steep hill as a passenger on the load of slippery straw. This contention cannot be approved. The highways are made for use by farmers as well as others, and it cannot be said as a matter of law that one may not ride upon a load of straw without assuming all risk of accident because of a defective highway.

It is said the court erred in his charge to the jury relating to want of breeching on the harness. The court charged the jury as follows:

"The defendant also claims that an ordinarily prudent man would have used breeching on his horses in driving down such a hill as this was with such a load. The fact that there was no breeching on the harness would not be material unless you find that the lack of breeching was one of the contributory causes to the injury; whether considering the question of the plaintiff's negligence or the defendant's negligence, you find that either was guilty of negligence and that it had nothing to do with the injury, it is not important and you can forget it. So I say that whether he had breeching is not important or material if you find that the lack of breeching had nothing to do with the accident. The question is not whether breeching were necessary, or whether you think it would have been safer; whether you yourselves think it would be safer to have used breeching, that might be a matter of opinion or matter of judgment. A man would not be negligent if he used his best judgment and his best knowledge, even though his judgment was wrong. The question is in relation to this claim of negligence as I have explained in regard to the other, Did he use such care as an ordinarily prudent man would have used under the same circumstances? Considering all the facts and circumstances, the question is, Did the plaintiff use ordinary care for his own safety? If he used ordinary care, he would not be guilty of negligence. If he did not use ordinary care commensurate with the dangers as he understood them, he would be guilty of contributory negligence; and when I speak of the plaintiff I am referring also to the son who was driving the horses, and whose negligence, as I told you, if he were guilty of any negligence, would be imputed to the father."

Counsel say:

"What we are complaining of in the foregoing charge is that all of the statements of the court with reference to breeching were negative. He stated that the fact that there was no breeching on the harness

would not be material unless it was also found that the lack of breeching was one of the contributing causes to the injury, and again he said that whether he had breeching is not important or material if you find that the lack of breeching had nothing to do with the accident."

The testimony was very conflicting upon the need of breeching. Many witnesses testified that with such a load as was drawn in the instant case it would not be necessary, and at least one of them testified that it would be harmful. On the other hand there was testimony offered by the defendant that breeching was essential. We think the jury was not misled upon this subject by the charge.

Complaint is made because the court did not give without modification the following charge:

"In determining the weight to be given to the testimony of witnesses, you are entitled to take into account their interest, bias, and prejudice, if any, as it appears from the testimony, or as indicated by the witness upon the stand. You are also entitled to take into account in determining the weight to be given to testimony as to distances, size, depth, etc., the method by which the result was reached. That is, an interested witness who makes a guess as to a certain distance is not entitled to as much credence as the testimony of a disinterested witness who has made accurate measurements with appropriate instruments." Counsel citing *Perkins* v. *Township of Delaware*, 113 Mich. 377, and *Jones* v. *City of Detroit*, 171 Mich. 608.

The court said as to this charge:

"No. 3 I struck out. I will give this part of it, so far as I read. I did not intend to strike it all out, but the latter part of it I did not intend to give. In determining the weight to be given to the testimony of witnesses, you are entitled to take into account their interest, bias and prejudice, if any, as appears from the testimony or as indicated by the witnesses on the stand. You are also entitled to take into account in

determining the weight to be given to testimony as to distances, size, depth, etc., the method by which the result was reached."

The cases cited by counsel are easily distinguishable from the instant case. It was not for the court to intimate that an interested witness might not be truthful and accurate, or to express an opinion as to which witness was entitled to credence.

Did the court err in giving the jurors further instruction after they had been out a long time and in what was said to them? After a colloquy between the foreman, the judge, and one of the jurors, the record shows as follows:

"*The Court:* Have you got the charge there?

"*The Reporter:* Yes, your honor.

"*The Court:* I think you better read the charge. That would be the better and safer way.

"*Mr. Geib:* If the court please, I don't suppose it will be necessary to read the part relating to damages; only the part relating to the right to recover.

"*The Court:* I don't know.

"*Mr. Juror Unterkircher:* There is another I forgot to mention. Some of the jurors seem to take from your charge that the question of driving without a breeching should be eliminated from our verdict. Some of us understood you one way and some another.

"*The Court:* Well, I think you better listen to the charge. Before you start with that, did I speak loud enough for you to hear?

"*Mr. Juror Unterkircher:* We could hear here, but back there they could not.

"*The Court:* I ask that for my information and the reporter's in reading it. If some of you do not hear, just make it known.

"*Mr. Geib:* If the court please may I suggest that the reporter sit up here in this chair (indicating witness chair) ; I think that will help the jurors to hear better.

(Whereupon the reporter read to the jury the charge of the court, including such requests as the court gave, but excluding the part relating to damages and their computation.)

"*The Court:* Now, gentlemen, the verdict of the jury, of course, should represent the individual judgment of each and every juror. Nevertheless, it is desirable that you reach an agreement, if you can do so, without violating your convictions and judgments; and in order to bring that desired end about, you should reason with each other, listen to each other's arguments, and see if possibly you might be wrong and the other juror might be right. By listening to what each other has to say it is just possible that you can arrive at a verdict. I don't know as it is necessary for me to say that to you, because I am satisfied that you have been doing everything that you honestly could to arrive at a fair verdict. I know from my experience with jurors that some jurors are very settled and firm in their convictions, and they do not care to argue with other jurors about it at all. That probably is not the case with any of you; but it is your duty to argue with each other, listen to what the others have to say, in order that you might arrive at an agreement. That is all I care to say in regard to that. You may retire."

We do not think this was error. See 38 Cyc. p. 1899; *Kelly* v. *Emery*, 75 Mich. 147; *Knapp* v. *Railway Co.*, 114 Mich. 199; *Stevenson* v. *Railway Co.*, 118 Mich. 651; *Richardson* v. *Railway Co.*, 182 Mich. 206.

The case was full of conflicting testimony upon the controlling facts and was properly submitted to the jury under the following authorities: *Speck* v. *Township of Bruce*, 166 Mich. 550 (35 L. R. A. [N. S.] 203), and the many cases cited therein; *Highland* v. *Township of Garfield*, 168 Mich. 538; *Loose* v. *Township of Deerfield*, 187 Mich. 206; *Pool* v. *Township of Montague*, 194 Mich. 476; *McIntyre* v. *Township of Grant*, 206 Mich. 223.

Judgment is affirmed with costs in favor of the plaintiff.

BIRD, C. J., and SHARPE, STEERE, BROOKE FELLOWS, STONE, and KUHN, JJ., concurred.