GREGORY v. McNITT.

1. COMPROMISE AND SETTLEMENT—RECEIPT—WRITING CONSTITUTED SETTLEMENT.

A writing signed by plaintiff, reciting that she was satisfied with the wages received and relinquishing all claims for her services, was more than a mere acknowledgment of receipt of wages, and purported to settle matters in dispute.

2. SAME—SETTLEMENTS FAVORED BY LAW—CONCLUSIVE IN ABSENCE OF FRAUD, MISTAKE OR DURESS.

Settlements are favored by the law, and will not be set aside except for fraud, mistake, or duress.

3. SAME—TRIAL—INSTRUCTION—IMPEACHMENT OF SETTLEMENT.

In an action for services, where plaintiff had signed a writing reciting that she was satisfied with the wages received and relinquishing all claims for her services, but which she claimed to have signed for another purpose, an instruction that the instrument "may be rebutted by

¹Compromise and Settlement, 12 C. J. § 25; ²Id., 12 C. J. § 32; ³Id., 12 C. J. § 83; 25 L. R. A. (N. S.) 287; 6 A. L. R. 555; 38 A. L. R. 759; 5 R. C. L. 878; 1 R. C. L. Supp. 1542; 5 R. C. L. Supp. 308; 6 R. C. L. Supp. 336; 7 R. C. L. Supp. 164.

parol or other evidence," without stating what the evidence must show, fell short of protecting defendant's rights.

4. PAYMENT—WHERE RECEIPT IMPEACHED BY SIGNER OTHER PARTY HAS BURDEN OF PROVING PAYMENT.

A mere, receipt is not conclusive evidence of payment, for it may be impeached, but the signer is bound unless he unbinds himself within permissible rules, and if his testimony impeaches the receipt, then the other party has the burden of going forward with proof of payment.

NORTH, POTTER, and SHARPE, JJ., dissenting.

Error to Muskegon; Vanderwerp (John), J. Submitted January 13, 1928; resubmitted March 27, 1928. (Docket No. 74.)     Decided June 4, 1928.

Assumpsit by Barbara Gregory against Stephen D. McNitt for services rendered.    Judgment for plaintiff.    Defendant brings error.    Reversed.

*Carpenter & Jackson,* for appellant.

*George S. Lovelace,* for appellee.

NORTH, J. *(dissenting).*    This suit is brought by Barbara Gregory to recover for services which she claims she rendered as a domestic in and about the defendant's household.    The case was tried by a jury, the plaintiff recovered, and the defendant reviews on writ of error.

The defendant, Stephen D. McNitt, seems to have been a prosperous farmer, and in May, 1916, the plaintiff, who was then a little past 14 years of age, through an arrangement with the defendant's wife, began work in the defendant's home.    She continued to work there until January 23, 1924.    At first her wage was $3 per week and it was to be increased as she was able to earn more.    For the first four or five months, Mrs. McNitt paid the plaintiff.    These

⁴Payment, 30 Cyc. p. 1266.

earnings were demanded from her by her parents and turned over to them.  Her parents were foreigners, and her home surroundings were unfortunate.  She testified that they expected her to bring home something to drink, and when she failed to do so they beat her.  Ill-treatment of this character gave rise to a plan that Mrs. McNitt should be appointed guardian for Barbara.  This was done October 14, 1916.  In this way Barbara's parents were prevented from misusing her and appropriating her earnings.  To some extent, at least, Barbara was treated as a member of the McNitt family, and was cared for during two or three periods of illness.

In January, 1923, the plaintiff secured work elsewhere; and about a week later, when she returned to the McNitt home for some of her possessions, she signed a paper which, at the request of Mrs. McNitt, was written by her daughter, Mrs. Frances Criderman. This paper reads as follows:

"January 23, 1924.  This is to certify that I, Barbara Gregory, am satisfied with the wages and care I have received up to date from Mr. and Mrs. S. D. McNitt for the past seven years and eight months. And I, therefore, relinquish all claim on them in the future.  Signed and witnessed this day, January 23rd, 1924, in the presence of Goldie Gilbert, signed Barbara Gregory."

There is a sharp conflict in the testimony relative to the circumstances under which the plaintiff's signature was obtained to the foregoing and as to her understanding of the purpose and purport of this paper. There had been some neighborhood gossip about Barbara, and she claims the defendant told her that her people had been to see a lawyer and had tried to make the defendant some trouble incident to this affair, and she asserts that this was given as the reason why they wanted her to sign this paper, i. e., to show her

people she "had been treated all right." She says Mr. McNitt had been guilty of no wrong conduct towards her; that there was no truth in the story about her, and she was perfectly willing to sign an agreement to that effect; but that she wanted to go before the probate judge to do so. This she claims was not satisfactory to Mrs. McNitt and her daughter, and that they coerced her into signing the paper as prepared. A portion of this testimony as given by plaintiff is as follows:

"But Mrs. Cutler (now Mrs. Criderman) said—between the two of them, Mrs. McNitt was in bed and she had a little horsewhip that you get at circuses with a balloon on it, and finally Mrs. McNitt flew at me with the whip and Frances (Mrs. Criderman) took hold of my arm and said 'You are going to sign that paper. Mother is getting worse and she will have another stroke if you don't sign it.' I told them I was willing to sign it if it went to the judge of probate. They talked to me about signing an agreement about showing I was treated all right in the home and my people could not cause them no more trouble, because my people, Mr. McNitt had told me, caused him some trouble about stories, and I said I was willing to sign a paper to that effect, but I wanted it to go before the judge of probate, but they drew it up themselves and made me sign it. The only money I got was $15 from Mr. McNitt. That was the only money I got for my seven years' work."

Notwithstanding the plaintiff signed the agreement or receipt hereinbefore quoted, she claims that with the exception of $15 paid to her by the defendant, she received nothing for her services after Mrs. McNitt was appointed guardian, October 14, 1916. On the other hand, the defendant claims that the plaintiff has been paid and that she voluntarily and knowingly signed the paper as a receipt in full; and he asserts that the surrounding circumstances are almost conclusive of the falsity of plaintiff's testimony. There

is proof that Mrs. McNitt had suffered a stroke of paralysis less than a month previous to the date of the receipt; that she had only partially recovered, and was in no physical condition to threaten the plaintiff; and, further, that this incident occurred in the presence of a Miss Goldie Gilbert, a school teacher who was then residing at the McNitt home and who signed the receipt or agreement as a witness. This young lady testified that all was peace and harmony in the home at the time this paper was executed; that Barbara was in poor health, that "she did not want to leave" the home but had to do so because, with Mrs. McNitt in ill health, it made two invalids in the household most of the time; and that there was no hesitancy on Barbara's part about signing the receipt. Unfortunately this testimony conflicts with that of the defendant's daughter, Mrs. Criderman, who as a witness for her father said: "I heard her (Barbara) say to my mother she had a position at the county home and could go there to work. She said she wanted to." The plaintiff denied that the witness Goldie Gilbert was present when the receipt was signed; but stated that she later came into the room. All this and other conflicting testimony was submitted to the jurors, before whom the plaintiff prevailed.

The defendant has presented 11 assignments of error. The first has to do with the court's refusal to sustain the defendant's objection to the plaintiff's testimony as to what the defendant told her concerning her people making a complaint to an attorney and giving that as a reason why her signature was wanted to a paper to show that she had been treated properly in the McNitt home. The objection made solely on the ground that it was hearsay was not tenable. This testimony was both competent and material. It purported to be the defendant's own statement and was the plaintiff's explanation as to her understanding of

the reason why they desired her to sign the so-called agreement or receipt.

The second assignment of error is based on the court's refusal to sustain an objection to the following question asked of the defendant on cross-examination relative to his loss in the bank at Ravenna:

"*Q.* How much did you lose?
"*A.* Well, at the time the bank went wrong I had about $1,800 in it."

The objection was that this was immaterial, and in the defendant's brief it is also urged that it was prejudicial. The force and pertinency of this cross-examination of the defendant arises from the fact that the plaintiff had testified he gave her this circumstance of his having money in the Ravenna bank as a reason why he could not then pay her. It was cross-examination of the defendant which tended strongly to corroborate the plaintiff; and, being proper cross-examination, it was none the less permissible because it may have been detrimental to the defendant's side of the case. The objection was properly overruled.

The third and fourth assignments of error relate to rulings of the court in excluding testimony offered by the defendant. We have given this portion of the record thorough consideration and are of the opinion that the rulings were proper, and that a discussion of them here is unnecessary.

The fifth assignment involves the refusal to direct a verdict for the defendant. Counsel for defendant correctly state in their brief:

"The really important question in the case is whether there has been a settlement between the parties and a payment in full of all that the defendant owed the plaintiff."

On this issue there was positive testimony *pro* and *con;* and the court could not properly have directed

a verdict.    Counsel also state that plaintiff's receipt should have been held to be conclusive proof against her contention, but such a holding would have been decidedly improper in view of the testimony she gave as to the manner in which and her understanding of the purpose for which the paper was obtained from her.    Only a portion of the testimony on this phase of the case is hereinbefore quoted, but it unquestionably presented an issue of fact.    *Brusseau* v. *Potter's Estate,* 217 Mich. 165.

The defendant submitted the following requests to charge.    They were refused and this is covered by assignments of error 6 to 9 inclusive:

"(6) The testimony of the plaintiff that she was compelled to sign the receipt by Mrs. McNitt's threats of personal violence in view of Mrs. McNitt's condition is so improbable that you should ignore it.

"(7) The receipt signed by the plaintiff on the 24th day of January, 1923, is a complete defense to her action unless she was forced to sign it by threats of personal violence by Mrs. McNitt.

"(8) If you find that the plaintiff signed the receipt voluntarily and not under compulsion by Mrs. McNitt your verdict must be for the defendant.

"(9) Under the plaintiff's testimony that her guardian was to hold her wages for her until she became of age, the plaintiff is not entitled to recover for any wages earned by her before she was 21 years of age."

It is elementary that the trial judge had no authority to pass upon the credibility of testimony given by the plaintiff as he was asked to do in the defendant's sixth request; and much less could he have properly charged the jury to ignore it because it was improbable.    *Spray* v. *Ayotte,* 161 Mich. 593; *Vinton* v. *Township of Plainfield,* 208 Mich. 179.    The seventh and eighth requests were properly refused because each is conditioned solely on the threats or compulsion of Mrs. McNitt; whereas there is testimony that Mrs.

McNitt's daughter was present at the signing of the paper and decidedly an active participant in what plaintiff claims was coercion.    A request to charge based upon an erroneous assumption of the facts, either expressed or implied, which may mislead the jury should not be given.    *McNetton* v. *Herb,* 158 Mich. 525; *American Seed Co.* v. *Cole,* 174 Mich. 42.    A further objection to these requests is that plaintiff claims her signature was not only obtained by threats or coercion but that she was deceived as to the purpose for which it was secured; she believing it was to exonerate the defendant from the wrongful charge of having ill-treated her.    The ninth request was also properly rejected because there was no pretense or claim of a defense that plaintiff's wages had been paid to her guardian.    The defendant testified that his wife hired the plaintiff with his knowledge and consent and he expected to pay her; and, further, he said:

"That my wife had been appointed her guardian did not make any difference as to the arrangement for Barbara's pay; she was entitled to her wages just the same."

One of the two remaining assignments of error relates to the circuit judge's charge to the effect that a receipt not under seal is only an admission of payment; it may be rebutted and will not be given effect if obtained by improper influence.    Considering the issues of fact involved, the above statement of the law was justified and was in no way prejudicial to the defendant.    *Brusseau* v. *Potter's Estate, supra.*    The other assignment is that the court erred in denying the defendant's motion for a new trial.    We have carefully reviewed this phase of the record and find the assignment to be without merit.    The questions raised incident to this motion are largely covered by the other assignments of error, of which a disposition has been above made.

The judgment of the lower court should be affirmed. The appellee should have costs of this court.

POTTER and SHARPE, JJ., concurred with NORTH, J.

WIEST, J.    The paper signed by plaintiff went beyond a mere acknowledgment of receipt of wages, and purported to settle the very matters in suit.

In *Pratt* v. *Castle,* 91 Mich. 484, it was stated:

"Settlements are favored by the law, and will not be set aside, except for fraud or mistake or duress."

This was followed in *Lauzon* v. *Belleheumer,* 108 Mich. 444; *Brevoort* v. *Partridge,* 156 Mich. 359.

The paper signed by plaintiff should have been accorded probative value unless impeached; otherwise it performed no office and was a meaningless precaution. It purported to be an expression of the truth and carried verity until impeached by evidence of fraud, duress, or mutual mistake in its procurement.    It was not enough to say that it "may be rebutted by parol or other evidence" without stating what the evidence must show.    Of course, a mere receipt is not conclusive evidence of payment, for it may be impeached, but the signer is bound unless he unbinds himself within permissible rules.    If plaintiff's testimony impeached the receipt, then defendant had the burden of going forward with proof of payment.

I think the instruction given fell short of protecting defendant's rights, and the judgment is reversed, with costs, and a new trial granted.

FEAD, C. J., and FELLOWS, CLARK, and MCDONALD, JJ., concurred with WIEST, J.