## ERKILETIAN v. DEVLETIAN.

1. RELEASE—JOINT TORTFEASORS.
    The release of one joint tortfeasor releases all.

2. EVIDENCE—RELEASE—PAROL TESTIMONY.
    As a rule, parol testimony is inadmissible as to the discussion which leads up to the execution of a full, complete and unambiguous written release.

3. RELEASE—PAROL EVIDENCE—CONTRACT CLAIM—TORT CLAIM.
    In the absence of claim of fraud, concealment or duress incident to execution of release of all claims by plaintiff against one joint tortfeasor, now deceased, against whom plaintiff had a contractual claim for rent as well as tort claim for loss of part of ear bitten off by such tortfeasor, plaintiff, in tort action against remaining tortfeasors, could not show by parol evidence that release was limited to contract claim.

4. EVIDENCE—PAROL EVIDENCE—RELEASE—FRAUD.
    Parol evidence is admissible to explain ambiguities in release or, in a proper proceeding and under certain circumstances, to show that because of fraud, duress, or mistake there was no release of the claim sued upon, but without these elements it is never admissible in an action at law to contradict the plain terms of a written instrument.

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE.
    Question of whether or not verdict was against the great weight of the evidence is not discussed where judgment notwithstanding verdict was not granted on such ground.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted June 5, 1941. (Docket No. 3, Calendar No. 41,373.) Decided September 2, 1941.

Case by Jevan Erkiletian against Harry Devletian and others for personal injuries. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Frank Schwartz,* for plaintiff.

Effect of a release of one tortfeasor from liability for a harm, given by the injured person, see 4 Restatement, Torts, § 885.

*Leon Dreifuss,* for defendant Nevart Mgrian.

*Richard Tabibian* (*Van H. Ring,* of counsel), for defendant Harry Devletian.

BUTZEL, J. While on a trip to Europe (1933–1935.) plaintiff Erkiletian left his property and business affairs in charge of Jevan Mgrian, with whom he was a partner in the hotel business in Detroit. Mgrian forwarded moneys to plaintiff from time to time, but when remittances (though requested) ceased, plaintiff returned to Detroit. Upon his arrival (April 3, 1935), he immediately went to Mgrian's home and demanded his bank book. Words led to blows. A number of people were present, including Mgrian's wife, Nevart. Later defendant Devletian arrived. Plaintiff claims that defendants Devletian and Nevart Mgrian held his hands while Jevan Mgrian bit off a piece of his ear. They, on the other hand, claim that they tried only to separate the combatants. A criminal prosecution for mayhem was instituted, but nol-prossed when Jevan Mgrian was killed in an automobile accident.

Plaintiff filed a probate claim against Jevan Mgrian's estate. It was not introduced in evidence in this suit. There is an indication that the size of the claim was small in comparison with the consideration which the estate gave for a general release of all claims (including this probate claim) which the plaintiff subsequently signed. We assume, therefore, that the probate claim covered only contractual liability, and not the damages sought in the present suit for loss of part of the ear.

Following a custom among the Armenian countrymen of the parties litigant, an attempt was made to settle their differences out of court. Nine persons, including plaintiff and the attorney for the Mgrian estate, met at the home of one of their number for

the purpose of effecting a settlement. One Torozian testified that he had arranged the meeting and attended it as plaintiff's representative, at plaintiff's request; that the purpose of the meeting was to settle all differences, including the ear damage; that the question whether the ear damage should be settled was fully discussed; that at first plaintiff was disinclined to include it in the settlement, but that witness advised him to settle all claims, including the ear injury, to which he finally agreed. Plaintiff admitted on the stand that Torozian represented him at the conclave. Richard Tabibian, attorney for the Mgrian estate and for the defendants in the instant suit, drew up the following general release, which plaintiff signed at the close of the meeting:

"Detroit, Michigan,
"11th day of March, 1937.
"I, the undersigned, Jevan Erkiletian, hereby settle all my claims against Jevan Mgrian and his estate and hereby release and forever discharge all my claims against him and his estate and hereby agree to dismiss my suit in probate court under the following conditions:

"For all my claims against said estate I hereby agree to accept for full payment the sum of $600 and all his right, title and interest in rooming house property and rooming house furniture at 14034 John R., Highland Park, Michigan, payment to be made as follows:

"$200 at the signing hereof; the receipt of which is hereby acknowledged, transfer of property and bill of sale of furniture with proper documents at the signing hereof; additional $200 on the 25th day of March, 1937, and further $200 at the rate of $50 per month from the 25th day of March, 1937.

"(Signed) JEVAN ERKILETIAN.
"Witnessed:
"HOREN H. TOROSIAN,
"PAUL UZNIKIAN."

The moneys were paid over and the furniture turned over to plaintiff. No formal bill of sale was executed, but this is not important. Shortly thereafter plaintiff brought the instant suit against Devletian, Nevart Mgrian as an individual, and Nevart Mgrian as administratrix of Jevan Mgrian's estate. Plaintiff submitted to a voluntary nonsuit as against the Mgrian estate.

The parties all concede that the action is solely in tort and that if the Mgrian estate was discharged from liability by the release hereinbefore set forth, the other defendants are also discharged, since according to plaintiff's claim they and decedent Jevan Mgrian were joint tortfeasors, and the release of one joint tortfeasor releases all. The case was tried twice, each time resulting in a substantial verdict for plaintiff. On the second trial timely motions for directed verdict were made by defendants, and judgment notwithstanding the verdict given them, such motions having been reserved under the Empson act (1 Comp. Laws 1929, § 14531 *et seq.*, as amended by Act No. 44, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 14531 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 27.1461 *et seq.*]).

Plaintiff claims that he signed the release intending it to cover only a contractual obligation of moneys due for rent and that the claim for damages for loss of part of his ear was not even discussed at the meeting at which he signed the release. Plaintiff is the only one of the nine persons present at that meeting who so testifies. Of the remaining eight, three were not called to the stand, but five, apparently disinterested, affirmatively testified that the ear injury was discussed and that plaintiff agreed to include it in the release. In granting judgment *non obstante veredicto,* the trial court declared that plaintiff was not an ignorant man, did

not claim that the release was not read to him, or that he did not understand its terms, or that he was misled into signing it. The jury in returning general verdict for plaintiff also answered in the negative the following special questions submitted to them:

"Did the plaintiff and his countrymen who met at the home of Torozian [Terzian is meant] discuss the claim of his injuries, and is it included in this receipt? Was it the intent of all the parties there to include all of the difficulties by [between is meant] them, plaintiff and deceased Mgrian?"

Notwithstanding the verdict, which awarded plaintiff $2,500 damages, the circuit judge properly granted judgment to defendants.

This is not a bill in equity to reform the instrument. Fraud, concealment, duress are not claimed. The release is perfectly plain and free from ambiguity. The words "all my claims" occur in it no less than three times. Plaintiff agrees to "settle," "discharge," and "accept full payment" *for all his claims* against the estate of Jevan Mgrian. As a rule parol testimony is inadmissible as to the discussion which leads up to the execution of a full, complete and unambiguous written instrument. Plaintiff's counsel, who admitted that he was not attacking the release on the ground of fraud, sought to vary the terms of a written instrument in an action at law between the parties thereto. This he could not do. There are many cases which hold that a release constitutes a perfect bar to plaintiff's suit, that parol evidence may not be received to vary or cut down the terms of a general release, that the negotiations and discussion that led up to the signing of a full release are merged therein. Such cases hold that it is the duty of the judge to direct verdict

for defendant, when such a release is pleaded, proved, and not attacked for fraud, duress, et cetera. *Houghton* v. *Ross,* 54 Mich. 335 (''all demands''); *Freeman* v. *Freeman,* 68 Mich. 28 (''all matters of difference between them, of whatever name or nature''); *Pratt* v. *Castle,* 91 Mich. 484 (''all debts, dues and demands to this date''); *Tanner* v. *Merrill,* 108 Mich. 58 (31 L. R. A. 171, 62 Am. St. Rep. 687) (receipt in full for wages); *Lauzon* v. *Belleheumer,* 108 Mich. 444 (''all claims of every nature''); *Dailey* v. *Saginaw Building & Loan Association,* 133 Mich. 403 (''any and every claim of every kind and character''); *Brevoort* v. *Partridge,* 156 Mich. 359 (''in full settlement of all matters between them''); *Crawley* v. *Studebaker Corporation,* 183 Mich. 462 (''any and all actions, causes of action, claims and demands''); *Gregory* v. *McNitt,* 242 Mich. 506 (''I  *  *  *  relinquish all claim''); *Olshove* v. *Railroad Co.,* 245 Mich. 369 (''all liability for said fire damage''); *Board of County Road Commissioners* v. *Midland Contracting Co.,* 247 Mich. 222 (''to balance accounts'').

Parol evidence is admissible to explain ambiguities, or, in a proper proceeding and under certain circumstances, to show that because of fraud, duress, or mistake there was no release of the claim sued upon, but without these elements it is never admissible in an action at law to contradict the plain terms of a written contract.

Cases cited by plaintiff are readily distinguishable. We cite but one, the latest, *Gayden* v. *Arabais,* 292 Mich. 651, as typical. There an insurance adjuster by falsely representing to plaintiff that the amount of money he had paid her was only a partial payment to date, and not a final settlement, fraudulently procured her signature to a general release.

We call attention to the case of *Allen* v. *Ruland,* 79 Conn. 405 (65 Atl. 138, 118 Am. St. Rep. 146,

8 Ann. Cas. 344), though not cited by counsel, wherein the identical question on very similar facts is discussed, and it was held that parol testimony could not be received to cut down the general language of the release and to show that it was intended to cover only a contractual liability, and not the tort in suit, and the supreme court of errors held that the trial court had only performed its duty by directing verdict for defendants, who were joint tortfeasors with the releasees.

As the circuit judge did not grant defendants' motions for judgment notwithstanding the verdict on the ground that the verdict was against the great weight of the evidence (as claimed by plaintiff), we refrain from discussing that question.

The judgment is affirmed, with costs to defendants.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, STARR, and WIEST, JJ., concurred.