594 N.W.2d 853 (1999)
234 Mich. App. 512
Evon ROMSKA, Plaintiff-Appellant,
v.
David OPPER, d/b/a Dave Opper's Excavating, Defendant-Appellee.
Docket No. 195410.
Court of Appeals of Michigan.
Submitted June 2, 1998, at Detroit.
Decided March 19, 1999, at 9:15 a.m.
Released for Publication June 22, 1999.
*855 Michael McNamee, Port Huron, for the plaintiff.
Garan, Lucow, Miller, Seward & Becker, P.C. (by Randolph J. Martinek and Nancy J. Bourget), Detroit, for the defendant.
Before: MARKMAN, P.J., and SAAD and HOEKSTRA, JJ.
*854 MARKMAN, P.J.
Plaintiff appeals as of right from the order of the lower court granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(7) (release). We affirm.
This case arises from a May 1994 automobile accident. Plaintiff's vehicle was struck by a vehicle owned by Boyan Daskal and driven by Veliko Velikov. Defendant David Opper allegedly caused Velikov to swerve into oncoming traffic and strike plaintiff's vehicle. Without bringing suit, plaintiff filed personal injury claims with Farm Bureau Insurance, the insurer of the Velikov vehicle, and American States Insurance Company, defendant's insurance carrier. Farm Bureau discussed a "package settlement" with American States, but *856 American States was not interested. Plaintiff ultimately settled with Farm Bureau for $45,000. Plaintiff and Farm Bureau executed a standard release form, which included the following provisions relevant to this appeal:
I/we hereby release and discharge Boyan Daskal and Veliko Velikov, his or her successors and assigns, and all other parties, firms, or corporations who are or might be liable, from all claims of any kind or character which I/we have or might have against him/her or them, and especially because of all damages, losses or injuries to person or property, or both, whether developed or undeveloped, resulting or to result, directly or indirectly, from an accident which occurred on or about May 16, 1994 at [left blank] and I/we hereby acknowledge full settlement and satisfaction of all claims of whatever kind or character which I/we may have against him/her or them by reason of the above-named damages, losses or injuries.

* * *

All agreements and understandings between the parties hereto are embodied and expressed herein and the terms of this release and agreement are contractual and not a mere recital. [Emphasis supplied.]
Plaintiff was subsequently unable to negotiate a settlement with American States and filed suit against defendant. Defendant filed an answer and affirmative defenses that did not include the affirmative defense of release; however, defendant subsequently moved for summary disposition on the basis of the release entered into by Farm Bureau and plaintiff. Defendant claimed that the clear and unambiguous language of the release discharged American States from liability, too, even though there was no evidence that it had paid any consideration to plaintiff for the release from liability. The trial court subsequently permitted defendant to file amended affirmative defenses. The trial court also granted defendant's motion for summary disposition, determining that the broad language of the above release also released defendant and American States from liability. Plaintiff now appeals.[1]
Plaintiff's principal contention is that the trial court erred in granting defendant summary disposition. We disagree. This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. Rheaume v. Vandenberg, 232 Mich.App. 417, 420, 591 N.W.2d 331 (1998). When reviewing a motion granted pursuant to MCR 2.116(C)(7), we consider all affidavits, pleadings, and other documentary evidence submitted by the parties and, where appropriate, construe the pleadings in favor of the plaintiff. Id. A motion under this subrule should be granted only if no factual development could provide a basis for recovery. Id.
Because defendant clearly fits within the class of "all other parties, firms or corporations who are or might be liable," we see no need to look beyond the plain, explicit, and unambiguous language of the release in order to conclude that he has been released from liability.[2] "There cannot be any broader classification than the word `all,' and `all' leaves room for no exceptions." Calladine v. Hyster Co., 155 Mich.App. 175, 182, 399 N.W.2d 404 (1986).
Concerning the analysis of the dissent, we offer the following observations:
*857 First, plaintiff provided and received consideration under the release and the release, therefore, was valid. The validity of the release having been established, we are aware of no legal rule in Michigan that precludes settling parties from waiving whatever rights they choose.
Second, for at least two reasons, it is inappropriate to look to parol evidence here in determining the scope of the release: (a) the language of the release is unambiguous and thereby precludes resort to allegedly contradictory parol evidence, Meagher v. Wayne State Univ., 222 Mich.App. 700, 722, 565 N.W.2d 401 (1997);[3] and (b) the release contains an explicit merger clause that independently precludes resort to parol evidence. UAW-GM Human Resource Center v. KSL Recreation Corp., 228 Mich.App. 486, 579 N.W.2d 411 (1998).[4] The dissent gives no effect at all to the merger clause by allowing resort to exactly the same extrinsic evidence as might be allowed absent the merger clause.
Third, while the dissent describes its own rule as an "intent" rule, we would respectfully disagree. Rather, in our judgment, the common-law rule better deserves this description. The common-law rule holds that a general release of "any and all persons" unambiguously releases "any and all parties." The common-law rule holds that the language of a release should be accorded meaning. It is predicated on the intentions of the parties but, unlike the rule of the dissent, derives such intentions from the language of the release to which they have freely assented. In particular, it is hard to comprehend the dissent's description of its own rule where it refuses to give effect to the parties' own merger clause, which specifies that disputes concerning the release are to be resolved exclusively by resort to the language of the release itself.[5]
Fourth, the dissent's rule gives little credence to the possibility that, by including broad language in the release, the settling parties wanted to avoid the possibility of future legal burdens potentially arising out of lawsuits by plaintiff against third parties. As the Eighth Circuit Court of Appeals has remarked:
The defendant who originally procures the release gains nothing if the plaintiff *858 can sue other joint or concurrent tortfeasors. In such a case, the original defendant is left open to claims for contribution and/or indemnity and may wind up having to litigate the case anyway. [Douglas v. United States Tobacco Co., 670 F.2d 791, 794 (C.A.8, 1982).]
Given the conclusion of the dissent that even clear release language, coupled with a merger clause, does not afford protection against this prospect, it is hard to understand how finality could ever be achieved through a negotiated release.
Fifth, while we agree with the dissent that this is a case of "first impression" in Michigan with regard to the explicit consideration of the various rules that have evolved concerning the effect of a general release clause, we do note that there are decisions in our state that have adopted the common-law rule. In Grzebik v. Kerr, 91 Mich.App. 482, 486, 283 N.W.2d 654 (1979), the plaintiff was a passenger on a motorcycle, involved in an automobile accident. She settled with the driver of a car that hit the motorcycle, releasing the driver "and all other persons, firms or corporations from all claims, demands, damages, actions, or causes of action, on account of damage to property, bodily injuries or death, resulting, or to result, from an accident to me which occurred" on the specified date. Id. at 485, 283 N.W.2d 654. The release concluded, "It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known or unknown, suspected and unsuspected." Id. The plaintiff later sued the operator of the motorcycle. This Court affirmed summary disposition for the defendant, noting that "the release was expressly designed to release any and all claims." Id. at 487, 283 N.W.2d 654. In reaching this conclusion, the Court further observed, "The intent of the parties to a release, expressed in the terms of the release, governs the scope of the release." Id. at 486, 283 N.W.2d 654 (emphasis supplied), citing Detroit Automobile Inter-Ins. Exchange v. Joseph, 67 Mich.App. 393, 241 N.W.2d 221 (1976); Auto-Owners Ins. v. Higby, 57 Mich.App. 604, 226 N.W.2d 580 (1975).[6]
Sixth, we also disagree with the dissent that M.C.L. § 600.2925d; MSA 27A.2925(4),[7] which is based on the Uniform Contribution Among Tortfeasors Act, *859 12 ULA 194 et seq., in any way compels the result which it reaches. At common law, release of one joint tortfeasor automatically released all joint tortfeasors. The uniform act responded to what many felt was an unfair and inflexible common-law policyone which also worked to discourage settlementsby allowing a plaintiff to settle with less than all the alleged tortfeasors without discharging claims against the remaining tortfeasors. Rather than assisting in the resolution of the instant controversy, as the dissent suggests, the uniform act addresses an opposite controversy: the release given to only one joint tortfeasor. The act specifies that such a release does not discharge all others "unless its terms so provide." The instant controversy relates to the release given to "all" tortfeasors and whether such a release, in fact, discharges "all" tortfeasors. These are distinct matters.[8] However, even if the uniform act was thought to have some application by analogy to the instant controversy, its express focus is on the specific "terms" of the release. In place of the common-law presumption that the release of one joint tortfeasor releases alla presumption that was not necessarily compatible with the language of the release itselfthe uniform act substituted a different presumption, but also made clear that this new presumption was to be subordinate to the actual language of the release itself.[9]
Seventh, there is no evidence, as the plaintiff suggests, that the release here was not "fairly and knowingly made." Denton v. Utley, 350 Mich. 332, 342, 86 N.W.2d 537 (1957). Indeed, she does not point to anything specific in support of this proposition, other than her apparent discomfort with the broadness of the release language. We note that the document in question here is not particularly lengthy or complex and there are not multiple documents that must be read in conjunction with one another.
In our judgment, the rule proposed by the dissent, and admittedly adopted by some other jurisdictions, would engender uncertainty among parties to releases where currently there is none, breed opportunities for litigation where currently there are none, and erode the ability of individuals to fashion their own rules for dispute resolution free of the uncertainties of judicial intervention. Because we believe that this rule is ill-advised, and represents an unwarranted departure from traditional common-law principles in Michigan, we affirm the order of the trial court granting summary disposition for the defendant.
Plaintiff also argues that the trial court erred in permitting defendant to amend his affirmative defenses. We again disagree. This Court will not reverse a trial court's decision to grant or deny a motion to amend a pleading absent an abuse of discretion. Weymers v. Khera, 454 Mich. 639, 654, 563 N.W.2d 647 (1997). Plaintiff asserts that she was prejudiced by the decision to allow defendant to amend his answer because the memory of the insurance adjuster was not as "fresh" as it previously would have been. "Prejudice" *860 exists if the amendment would prevent the opposing party from receiving a fair trial where, for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost. Id. at 659, 563 N.W.2d 647. Here, the insurance adjuster testified that notwithstanding the delay, he remembered "the main gist of the thing." Moreover, the insurance file remained available and was, in fact, used by the witness to refresh his recollection of the events. Therefore, the trial court did not abuse its discretion in permitting defendant to amend his affirmative defenses.
Affirmed.
SAAD, J., concurs.
HOEKSTRA, J. (concurring in part and dissenting in part).
Although I agree with the majority that the trial court did not abuse its discretion in permitting defendant to amend his affirmative defenses, I disagree with the majority's conclusion that the trial court did not err in granting defendant summary disposition. A motion under MCR 2.116(C)(7) should be granted only if no factual development could provide a basis for recovery. Rheaume v. Vandenberg, 232 Mich.App. 417, 420, 591 N.W.2d 331 (1998). In my opinion, a question of fact remains about whether the parties intended to release from liability not only Farm Bureau Insurance Company but also defendant Opper's insurance company, American States Insurance Company. Accordingly, I would reverse the order of the trial court granting defendant summary disposition and remand this case to the trial court for further proceedings.
Plaintiff's release was typed on a printed form, which merely required her to fill in the blanks for the amount of consideration she received, the names of the parties she was releasing and indemnifying, the date of the accident, and where the accident occurred. The remaining language of the release, including the integration clause at the bottom of the form, was boilerplate wording. Thus, the completed release looked like the following:
FOR THE SOLE AND ONLY CONSIDERATION OF Forty-five thousand and 00/00 Dollars ($ 45,000.00) to me/us paid, receipt of which is hereby acknowledged, I/we hereby release and discharge Boyan Daskal and Veliko Velikov, his or her successors and assigns, and all other parties, firms, or corporations who are or might be liable, from all claims of any kind or character which I/we have or might have against him/her or them, and especially because of all damages, losses or injuries to person or property, or both, whether developed or undeveloped, resulting or to result, directly or indirectly, from an accident which occurred on or about May 16, 19 94 at [left blank] and I/we hereby acknowledge full settlement and satisfaction of all claims of whatever kind or character which I/we may have against him/her or them by reason of the above-named damages, losses or injuries.

* * *
Further, I/we hereby specifically agree to indemnify and hold harmless Boyan Daskal and Veliko Velikov from any and all claims brought by or on behalf of my/our children for any claims for loss of parental society and companionship arising out of the afore-described accident. It is specifically agreed and understood that this indemnification and hold harmless agreement includes repayment of any and all attorney fees and/or costs associated with or incurred by the herein indemnified person(s) or his/her or their insurance company in the processing, administration, and actual *861 legal defense of such claims, including all court costs associated with the defense of such claims.
All agreements and understandings between the parties hereto are embodied and expressed herein and the terms of this release and agreement are contractual and not a mere recital.
According to plaintiff, her counsel and the Farm Bureau insurance adjuster had no doubt that they intended for the document to operate only to release the insureds of Farm Bureau, who had struck plaintiff's vehicle. Negotiations continued with American States, the insurer of defendant Opper, who allegedly caused Velikov to strike plaintiff's vehicle. However, American States and plaintiff could not reach a settlement agreement. Plaintiff thereafter filed the complaint in this case. On appeal, defendant contends that the above release expressly dissolves his potential liability. Defendant argues that his interpretation of the release reflects the plain meaning of the document and, under the parol evidence rule, cannot be varied by reference to extrinsic evidence.
Discharge of all potential defendants may have far-reaching consequences for an injured plaintiff. Hurt v. Leatherby Ins. Co., 380 So.2d 432, 433 (Fla., 1980). At issue here is whether a stranger may rely on the omnibus language "all other parties, firms, or corporations" that is contained in a release. In 1971, the United States Supreme Court observed that "[t]hree rules have developed to deal with the question whether the release of one joint tortfeasor releases other tortfeasors who are not parties to or named in the release." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 343, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). The first rule is "[t]he ancient common-law rule, which was grounded upon a formalistic doctrine that a release extinguished the cause of action to which it related, was that a release of one joint tortfeasor released all other parties jointly liable, regardless of the intent of the parties." Id. The Supreme Court stated that it had expressly repudiated this rule. Id. at 344, 91 S.Ct. 795, citing Aro Mfg. Co., Inc. v. Convertible Top Replacement Co., Inc., 377 U.S. 476, 501, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964); Birdsell v. Shaliol, 112 U.S. 485, 489, 5 S.Ct. 244, 28 L.Ed. 768 (1884). The second rule "provides that, although a release of one coconspirator normally releases all others, it will not have such an effect if a plaintiff expressly reserves his rights against the others." Zenith Radio Corp., supra at 344, 91 S.Ct. 795. The Court noted that this rule had been adopted with some variation by statute in twenty-one states, by judicial decision in others, and in Restatement Torts, § 885(1) (1939). Id. at 344-345, 91 S.Ct. 795. The third rule, which the Court stated had gained support in several recent decisions and been adopted by the American Law Institute in a tentative draft of the Second Restatement of Torts, provides that "the effect of a release upon coconspirators shall be determined in accordance with the intentions of the parties." Id. at 345, 91 S.Ct. 795. See 4 Restatement Torts, 2d, § 885, p. 333.
Since 1971, these rules have been labeled by courts and commentators throughout the country as (1) the "flat bar rule, which most closely resembles the common law rule" and "holds that a general release is unambiguous as a matter of law and therefore provides for a complete discharge of all potential tortfeasors from within any enumerated classes," (2) the "specific identity rule, which strays the furthest from the common law rule" and "holds that a general release is limited in its scope and will not discharge other tortfeasors unless they are specifically named in the release," and (3) the "intent rule, which applies a middle of the road approach" and "holds that extrinsic evidence should be allowed to reveal the intentions of the parties as to the scope of the general *862 release." Bass, Tort Law, The General Release Forms: Three Distinct Views, 21 Am. J. Trial Advoc. 445 (1997) (citing cases therein).
Other courts have weighed the merits and failings of these three rules and specified the line of authority they favored, albeit without a clear majority rule among them emerging. Michigan has not wholly considered these three rules,[1] and, in that regard, this case represents one of first impression for this Court. Indeed, in cases applying Michigan law, release cases concerning broad language like that of the release before this Court have produced inherently conflicting results.[2] Consequently, this case presents an opportunity in which to weigh the merits and failings of these three rules and clearly declare a map for applying Michigan law to general release cases. I opine that in analyzing whether a stranger may rely on omnibus language in a general release, only the intent rule best effects the intentions of the parties between whom the document was negotiated.
One key reason for my rejection of the flat-bar rule is that it prolongs the legacy of an ancient principle that Michigan no longer acknowledges, namely, that a plaintiff suffers only a single and indivisible wrong and, therefore, the release of one joint tortfeasor is the release of all. "Under current Michigan law, the release of one of several joint tortfeasors does not release other joint tortfeasors unless the terms of the release so provide." Lincoln v. Gupta, 142 Mich.App. 615, 621, 370 N.W.2d 312 (1985). Our Legislature abolished the common-law principle when it enacted Michigan's release-contribution statute, which, at the time pertinent to this case, stated:
When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide.

* * *
(c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor. [MCL 600.2925d; MSA 27A.2925(4) (emphasis added).]
This statute, which was derived from § 6 of the Uniform Comparative Fault Act (UCFA),[3] 12 ULA 147, is significant in recognizing legislative intent to abolish the *863 common-law view. See generally anno: Release of one joint tortfeasor as discharging liability of others under Uniform Contribution Among Tortfeasors Act and other statutes expressly governing effect of release, 6 A.L.R.5th 883 (1992).
Moreover, I am convinced that fundamental fairness obligates us to reject the flat-bar rule. Certainly, the flat-bar rule is the simplest of the three rules to apply to facts such as those in this case, but that criterion should not guide this decision. As the authors of one legal treatise opined, "[t]he only desirable rule would seem to be that a plaintiff should never be deprived of a cause of action against any wrongdoer when the plaintiff has neither intentionally surrendered the cause of action nor received substantially full compensation." Prosser & Keeton, Torts (5th ed.), § 49, p. 335. Thus, the federal district court in McInnis v. Harley-Davidson Motor Co., Inc., 625 F.Supp. 943, 954-955 (D.R.I., 1986), was loath "[t]o preclude redress on the basis of a legal fiction arising from the chance insertion of boilerplate wording in a printed form of release procured by one other than the defendant" because to do so would be at odds with fundamental fairness. Indeed, the United States Supreme Court made the practical observation that the common-law or flat-bar rule would "frustrate such partial settlements, and thereby promote litigation." Zenith, supra at 347, 91 S.Ct. 795. Therefore, I conclude that the flat-bar rule of interpretation, which holds that a general release is unambiguous as a matter of law, is inconsistent with Michigan's enactment of a release-contribution statute and contrary to fundamental fairness.
This analysis does not resolve the question of which of the two remaining rules, the specific identity rule and the intent rule, is the better rule. Indeed, as decisions from across the nation confirm, the operative statutory phrase from the release-contribution statute, "unless its terms so provide," can arguably support application of either the specific identity rule or the intent rule.[4] I am persuaded that only the intent rule of interpretation *864 ensures that injured plaintiffs will not be barred from recovery because they executed releases in which they unknowingly and unintentionally discharged joint tortfeasors.
When the United States Supreme Court deliberated over whether a stranger may rely on omnibus language within a general release, it, too, chose the intent rule. In Zenith, supra at 342-343, 91 S.Ct. 795, the defendant had argued that damages were not recoverable because of a release executed between the plaintiff and other coconspirators in a separate antitrust action, but the defendant was neither a party to the release nor encompassed by the general phrase "subsidiaries and successors" used in the release. The trial court nonetheless found that the defendant was entitled to the benefit of the release because the plaintiff had failed to expressly reserve any rights against the defendant. Id. at 343, 91 S.Ct. 795. The United States Supreme Court disagreed. Having rejected the common-law or flat-bar rule, the Court next rejected the specific identity rule because the specificity required by that rule would create "a trap for unwary plaintiffs' attorneys." Id. at 347, 91 S.Ct. 795. Therefore, the Court concluded that the "straightforward rule is that a party releases only those parties whom he intends to release." Id. Although Zenith was an antitrust case, the Supreme Court's decision has been interpreted broadly by other courts as support for adoption of the intent rule. See Avery v. United States, 829 F.2d 817, 819 (C.A.9, 1987), and cases cited therein.
Because the intent rule holds that extrinsic evidence should be allowed to reveal the intentions of the parties with respect to the scope of the general release, the majority concludes that it runs afoul of the parol evidence rule, which excludes evidence of prior contemporaneous agreements that contradict, vary, or modify an unambiguous writing intended as a final and complete expression of the agreement. See UAW-GM Human Resource Center v. KSL Recreation Corp., 228 Mich.App. 486, 491, 579 N.W.2d 411 (1998). Also, the parol evidence rule clearly applies to releases. See, e.g., Erkiletian v. Devletian, 299 Mich. 95, 299 N.W. 821 (1941). Further, an integration clause would invoke the rule and prevent introduction of extrinsic evidence between the parties to the document. See, e.g., In re Backofen Estate, 157 Mich.App. 795, 800, 404 N.W.2d 675 (1987).
While it is generally correct that an unambiguous document must be interpreted solely on the basis of the information contained within its four corners, that is not always the case. Neves v. Potter, 769 P.2d 1047, 1054 (Colo., 1989). When a stranger to a release attempts to rely on omnibus language contained within the document, as in this case, parol evidence is admissible to establish whether the parties intended the release to apply to the nonparty. Accordingly, in applying the intent rule in Zenith, the United States Supreme Court looked to the language of the parties' previous contract, which established the parties' clear intent to exclude the defendant. The Supreme Court provided the following authority for looking to extrinsic evidence:
Resort may be had to the contract in construing the release since the parol evidence rule is usually understood to be operative only as to parties to a document, and HRI here was not a party to the release. See Stern v. Comm'r, 137 F.2d 43, 46 (C.A.2, 1943); O'Shea v. New York C & St. L R Co., 105 F. 559, 562-563 *865 (C.A.7, 1901); Restatement (Second) Torts § 885, Comment d (Tent Draft No. 16, 1970). See generally 9 Wigmore, Evidence, § 2446 (3d ed. 1940). [Zenith, supra at 348, n. 12, 91 S.Ct. 795.]
The Supreme Court's opinion in Zenith has provided support for other courts to take the position that parol evidence is admissible to establish whether parties intended a release to apply to a nonparty. For example, the Supreme Court of Colorado in Neves, supra at 1054, stated that "[t]his exception to the parol evidence rule accurately reflects Colorado's unsympathetic position toward parties who seek to take gratuitous advantage of an agreement when they are not parties to the agreement."[5] Similarly, in rejecting the defendant's argument that the integration clause in the release required a holding in his favor, the Oregon Court of Appeals stated, "We see no possible relevance that that provision, agreed to by the parties to the release, can have on whether parol evidence is admissible to establish whether the parties intended the release to apply to a nonparty." Brackenbrough v. MacCloskey, 42 Or.App. 231, 236, 600 P.2d 481 (1979). Indeed, this Court, too, has stated that it agrees with "the majority of courts which hold that the parol evidence rule cannot be invoked either by or against a stranger to the contract." Denha v. Jacob, 179 Mich.App. 545, 550, 446 N.W.2d 303 (1989), citing 30 Am. Jur. 2d, Evidence, § 1031, pp. 166-167. Therefore, because the parol evidence rule is operative only with respect to parties to a document, it cannot be invoked either by or against a stranger to the contract. Hence, in order to determine the intentions of the parties about the scope of a general release, extrinsic evidence should be allowed to determine whether a stranger may rely on the omnibus language "all other parties, firms, or corporations" that is contained within a release.
In applying the intent rule to the boilerplate wording that purported to release the vast array of "all other parties, firms or corporations" in this case, the trial court should have examined the intentions of the parties to the release with the aid of extrinsic evidence and determined whether plaintiff intended to release from liability American States, the insurance company that previously expressed no interest in settling with plaintiff. Of course, in doing so, the lower court would not have been constrained to find that the parties did not intend to release American States from liability. See, e.g., Chakov v. Outboard Marine Corp., 429 A.2d 984 (Del., 1981) (examining the extrinsic evidence and finding that the parties clearly manifested an intention that the release in question be a general release covering third parties). However, the trial court should not have summarily dismissed plaintiff's claim against defendant where more factual development could have provided a basis for recovery. See Rheaume, supra. Therefore, I would reverse the order of the trial court granting defendant summary disposition and remand this case to the trial court for further proceedings consistent with this opinion.
NOTES
[1] Plaintiff also filed a motion for reformation of release, which was denied. Plaintiff has not challenged that order.
[2] As the trial court observed, "[T]his release is clear and unambiguous on its face, it was entered into knowingly and intelligently, and it is clear that the plaintiff acknowledged full settlement and satisfaction of all of her claims that may arise out of this accident."
[3] The parol evidence rule excludes evidence of prior contemporaneous agreements, whether oral or written, which contradict, vary or modify an unambiguous writing intended as a final and complete expression of the agreement. Ditzik v. Schaffer Lumber Co., 139 Mich.App. 81, 87-88, 360 N.W.2d 876 (1984), citing NAG Enterprises, Inc. v. All State Industries, Inc., 407 Mich. 407, 410, 285 N.W.2d 770 (1979).
[4] For the narrowly drawn fraud and "incompleteness on its face" exceptions to the parol evidence rule, see 3 Corbin, Contracts, § 578, pp. 402-411, cited at UAW, supra at 494-495, 579 N.W.2d 411. The dissent's proposition that the merger clause is effective with regard to everyone but a "stranger" to the release is, of course, with regard to the scope of this release, equivalent to the notion that the merger clause is not effective at all. Whatever the merits generally of the proposition that the parol evidence rule cannot be invoked either by or against a stranger to a contract, Denha v. Jacob, 179 Mich.App. 545, 550, 446 N.W.2d 303 (1989), such a proposition seems inapposite when the very provision in controversy, and agreed to by the parties to the contract, explicitly relates to the interests of strangers. We emphasize, nevertheless, that the instant legal issue does not concern the rights of strangers, but rather the rights of the parties to a contract to achieve agreed-upon ends, including litigative finality.
[5] We believe that the dissent further errs in describing the common-law rule as the "flatbar" ruleand we recognize that this nomenclature is borrowed from the cited academic literaturebecause the common-law rule erects a "flat bar" only when this is consistent with the language of the release itself. If the release is drawn more specifically, then the more specific language would also presumably be given respect under the common-law rule. There is no presumption in favor of a "flat bar," merely a presumption that the language selected by the parties themselves is to be treated as binding.
[6] See also Taggart v. United States, 880 F.2d 867, 870 (C.A.6, 1989), ruling, on the basis of Michigan law, that a clear and unambiguous release that discharges "any and all other persons, associations and corporations" releases all noted classes from liability. Additionally in support of the proposition that the common-law doctrine of releases remains highly viable in the United States, see cases cited at anno: Release of one joint tortfeasor as discharging liability of others under Uniform Contribution Among Tortfeasors Act and other statutes expressly governing effect of release, 6 A.L.R.5th 883, 928-937; Bass, Tort Law, The General Release Forms: Three Distinct Views, 21 Am. J. Trial Advoc. 445 (1997). Still, we do agree with the dissent that there are different schools of opinion with regard to the effect to be given broad general release language. Id. We also acknowledge that Lee v. Auto-Owners Ins. Co., 201 Mich.App. 39, 505 N.W.2d 866 (1993), is inconsistent with Grzebik, but emphasize that it was vacated by the Supreme Court, 445 Mich. 908, 519 N.W.2d 890 (1994). In support of the common-law rule, see also Rosenthal v. GL & Associates, Inc, unpublished opinion per curiam of the Court of Appeals, issued February 23, 1996 (Docket No. 181226), and Makinen v. Speed Queen Co, unpublished opinion per curiam of the Court of Appeals, issued June 23, 1993 (Docket No. 152599), both approvingly citing Grzebik.
[7] At the time applicable in this case § 2925d provided, in relevant part:

When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 or 2 or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide. [Emphasis supplied.]
[8] The dissent cites the plurality opinion in Theophelis v. Lansing General Hosp., 430 Mich. 473, 424 N.W.2d 478 (1988). However, the exclusive focus of the Theophelis opinion was on the latter rule. "The United States Supreme Court [in Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)] has held that a release that clearly intendsas did the release in the instant caseto save the releasor's rights against another person subject to tort liability does not automatically surrender these rights." Id. at 504-505, 424 N.W.2d 478. Similarly, this rule was at issue in Avery v. United States, 829 F.2d 817 (C.A.9, 1987), and the cases cited therein.
[9] The dissent cites McInnis v. Harley-Davidson Motor Co., Inc., 625 F.Supp. 943, 954-955 (D.R.I., 1986), which appears to characterize reliance on the language of the release itself as a "legal fiction."
[1] In Theophelis v. Lansing General Hosp., 430 Mich. 473, 504-505, 424 N.W.2d 478 (1988), a plurality of the Michigan Supreme Court referenced the United States Supreme Court's decision in Zenith, supra. The lead opinion held that the common-law rule that the release of an agent discharged the principal from vicarious liability was not abrogated by the release-contribution statute, M.C.L. § 600.2925d; MSA 27A.2925(4). Theophelis, supra at 485-491, 424 N.W.2d 478.
[2] Compare Central States, Southeast & Southwest Areas Pension Fund v. Melody Farms, Inc., 969 F.Supp. 1034, 1034-1043 (E.D.Mich., 1997), with Taggart v. United States, 880 F.2d 867, 870 (C.A.6, 1989). Compare Lee v. Auto-Owners Ins. Co., 201 Mich.App. 39, 41, 505 N.W.2d 866 (1993), rev'd on other grounds 445 Mich. 908, 519 N.W.2d 890 (1994), with Grzebik v. Kerr, 91 Mich.App. 482, 486, 283 N.W.2d 654 (1979).
[3] In Dep't of Transportation v. Thrasher, 446 Mich. 61, 64-68, 521 N.W.2d 214 (1994), our Supreme Court discussed how the Legislature's effort at tort reform was loosely based on a blend of UCFA sections, including § 6, which provides the following:

A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2. [Id. at 67-68, 521 N.W.2d 214.]
[4] Courts that were uniform in finding that the common-law view had been abolished by enacting a state statute based on either the UCFA or the Uniform Contribution Among Tortfeasors Act (UCATA), 12 ULA 185, nonetheless divided in their choice between the two remaining rules.

Courts finding support for the specific identity rule include Moore v. Missouri P. R. Co., 299 Ark. 232, 239, 773 S.W.2d 78 (1989) (concluding that in order to satisfy the language of the state statute, broad boilerplate language is insufficient and a release must instead name or otherwise specifically identify the tortfeasors to be discharged); Saranillio v. Silva, 78 Hawai'i 1, 16, 889 P.2d 685 (1995) ("Construing releases to discharge joint tortfeasors not specifically designated on the face of the release would, in many cases, effectively perpetuate the common law rule and therefore frustrate the purpose of the statute."); Alsup v. Firestone Tire & Rubber Co., 101 Ill.2d 196, 201, 77 Ill.Dec. 738, 461 N.E.2d 361 (1984) ("We do not consider that the modifying language that follows, i.e., `unless its terms so provide,' should be interpreted to allow the legislative intendment of nullifying the common law rule to be frustrated through the use of what are often general release forms."); Aid Ins. Co. v. Davis Co., 426 N.W.2d 631, 634 (Iowa, 1988); Beck v. Cianchetti, 1 Ohio St.3d 231, 235, 439 N.E.2d 417 (1982) ("Allowing a discharge based upon general language which does not name or identify a tortfeasor perpetuates the common law rule and is contrary to the statute."); Bjork v. Chrysler Corp., 702 P.2d 146, 161-162 (Wy., 1985).
Courts finding support for the intent rule include McInnis v. Harley-Davidson Motor Co, Inc, supra at 957 (concluding that "if faced with this stock release containing boilerplate verbiage purporting to acquit `all persons, firms or corporations,' the Rhode Island courts would examine the intentions of the parties to the release with the aid of extrinsic evidence)"; Sellon v. General Motors Co., 521 F.Supp. 978, 983-984 (D.Del., 1981); Manos v. Trans World Airlines, Inc., 295 F.Supp. 1166, 1169-1170 (N.D.Ill., 1968) (applying California law); Neves v. Potter, supra at 1055 (finding that the intent rule best effectuates the purpose of the uniform act in that it retains the liability of joint tortfeasors unless the releaser intended to discharge all potential claims); Hurt v. Leatherby Ins. Co., supra at 434 (recognizing that the state legislature sought a middle ground based on the intent of the parties and finding that "the manifestation of intent must be more explicit than signing a printed form which happens to contain broad, general release language in addition to providing spaces for the specifically discharged parties").
[5] See also McInnis, supra at 952; Lemke v. Sears, Roebuck & Co., 853 F.2d 253, 255 (C.A.4, 1988) (applying Virginia law); Cleveland v. Cleveland Electric Illuminating Co., 538 F.Supp. 1287, 1289-1290 (N.D.Ohio, 1980); Smith v. Falke, 474 So.2d 1044, 1047 (Miss., 1985); Williams v. Physicians & Surgeons Community Hosp., Inc., 249 Ga. 588, 292 S.E.2d 705 (1982). See generally 66 Am. Jur. 2d, Release, § 52, p. 730.