Hoekstra, J.
(concurring in part and dissenting in part). Although I agree with the majority that the trial court did not abuse its discretion in permitting defendant to amend his affirmative defenses, I disagree with the majority’s conclusion that the trial court did not err in granting defendant summary disposition. A motion under MCR 2.116(C)(7) should be granted only if no factual development could provide a basis for recovery. Rheaume v Vandenberg, 232 Mich App 417, 420; 591 NW2d 331 (1998). In my opinion, a question of fact remains about whether the parties intended to release from liability not only Farm Bureau Insurance Company but also defendant Opper’s insurance company, American States Insurance Company. Accordingly, I would reverse the *523 order of the trial court granting defendant summary disposition and remand this case to the trial court for further proceedings.
Plaintiffs release was typed on a printed form, which merely required her to fill in the blanks for the amount of consideration she received, the names of the parties she was releasing and indemnifying, the date of the accident, and where the accident occurred. The remaining language of the release, including the integration clause at the bottom of the form, was boilerplate wording. Thus, the completed release looked like the following:
For the sole and only consideration op Forty-five thousand and 00/00 .................. — Dollars ($ 45,000.00 ) to me/us paid, receipt of which is hereby acknowledged, I/we hereby release and discharge Boyan Daskal and Veliko Velikov, his or her successors and assigns, and all other parties, firms, or corporations who are or might be hable, from all claims of any kind or character which I/we have or might have against him/her or them, and especially because of all damages, losses or injuries to person or property, or both, whether developed or undeveloped, resulting or to result, directly or indirectly, from an accident which occurred on or about May 16, 1994 at /left blankJ and I/we hereby acknowledge full settlement and satisfaction of all claims of whatever kind or character which I/we may have against him/her or them by reason of the above-named damages, losses or injuries.
Further, I/we hereby specifically agree to indemnify and hold harmless Boyan Daskal and Veliko Velikov from any and all claims brought by or on behalf of my/our children for any claims for loss of parental society and companionship arising out of the afore-described accident. It is specifically agreed and understood that this indemnification and hold harmless agreement includes repayment of any and all *524 attorney fees and/or costs associated with or incurred by the herein indemnified person(s) or his/her or their insurance company in the processing, administration, and actual legal defense of such claims, including all court costs associated with the defense of such claims.
All agreements and understandings between the parties hereto are embodied and expressed herein and the terms of this release and agreement are contractual and not a mere recital.
According to plaintiff, her counsel and the Farm Bureau insurance adjuster had no doubt that they intended for the document to operate only to release the insureds of Farm Bureau, who had struck plaintiffs vehicle. Negotiations continued with American States, the insurer of defendant Opper, who allegedly caused Velikov to strike plaintiffs vehicle. However, American States and plaintiff could not reach a settlement agreement. Plaintiff thereafter filed the complaint in this case. On appeal, defendant contends that the above release expressly dissolves his potential liability. Defendant argues that his interpretation of the release reflects the plain meaning of the document and, under the parol evidence rale, cannot be varied by reference to extrinsic evidence.
Discharge of all potential defendants may have far-reaching consequences for an injured plaintiff. Hurt v Leatherby Ins Co, 380 So 2d 432, 433 (Fla, 1980). At issue here is whether a stranger may rely on the omnibus language “all other parties, firms, or corporations” that is contained in a release. In 1971, the United States Supreme Court observed that “[t]hree rules have developed to deal with the question whether the release of one joint tortfeasor releases other tortfeasors who are not parties to or named in the release.” Zenith Radio Corp v Hazeltine *525 Research, Inc, 401 US 321, 343; 91 S Ct 795; 28 L Ed 2d 77 (1971). The first rule is “[t]he ancient common-law rule, which was grounded upon a formalistic doctrine that a release extinguished the cause of action to which it related, was that a release of one joint tortfeasor released all other parties jointly liable, regardless of the intent of the parties.” Id. The Supreme Court stated that it had expressly repudiated this rule. Id. at 344, citing Aro Mfg Co, Inc v Convertible Top Replacement Co, Inc, 377 US 476, 501; 84 S Ct 1526; 12 L Ed 2d 457 (1964); Birdsell v Shaliol, 112 US 485, 489; 5 S Ct 244; 28 L Ed 768 (1884). The second rule “provides that, although a release of one coconspirator normally releases all others, it will not have such an effect if a plaintiff expressly reserves his rights against the others.” Zenith Radio Corp, supra at 344. The Court noted that this rule had been adopted with some variation by statute in twenty-one states, by judicial decision in others, and in Restatement Torts, § 885(1) (1939). Id. at 344-345. The third rule, which the Court stated had gained support in several recent decisions and been adopted by the American Law Institute in a tentative draft of the Second Restatement of Torts, provides that “the effect of a release upon coconspirators shall be determined in accordance with the intentions of the parties.” Id. at 345. See 4 Restatement Torts, 2d, § 885, p 333.
Since 1971, these rules have been labeled by courts and commentators throughout the country as (1) the “flat bar rule, which most closely resembles the common law rule” and “holds that a general release is unambiguous as a matter of law and therefore provides for a complete discharge of all potential tortfeasors from within any enumerated classes,” (2) *526 the “specific identity rule, which strays the furthest from the common law rule” and “holds that a general release is limited in its scope and will not discharge other tortfeasors unless they are specifically named in the release,” and (3) the “intent rule, which applies a middle of the road approach” and “holds that extrinsic evidence should be allowed to reveal the intentions of the parties as to the scope of the general release.” Bass, Tort Law, The General Release Forms: Three Distinct Views, 21 Am J Trial Advoc 445 (1997) (citing cases therein).
Other courts have weighed the merits and failings of these three rules and specified the line of authority they favored, albeit without a clear majority rule among them emerging. Michigan has not wholly considered these three rules,[1] and, in that regard, this case represents one of first impression for this Court. Indeed, in cases applying Michigan law, release cases concerning broad language like that of the release before this Court have produced inherently conflicting results.[2] Consequently, this case presents an opportunity in which to weigh the merits and failings of these three rules and clearly declare a map for applying Michigan law to general release cases. I *527 opine that in analyzing whether a stranger may rely on omnibus language in a general release, only the intent rule best effects the intentions of the parties between whom the document was negotiated.
One key reason for my rejection of the flat-bar rule is that it prolongs the legacy of an ancient principle that Michigan no longer acknowledges, namely, that a plaintiff suffers only a single and indivisible wrong and, therefore, the release of one joint tortfeasor is the release of all. “Under current Michigan law, the release of one of several joint tortfeasors does not release other joint tortfeasors unless the terms of the release so provide.” Lincoln v Gupta, 142 Mich App 615, 621; 370 NW2d 312 (1985). Our Legislature abolished the common-law principle when it enacted Michigan’s release-contribution statute, which, at the time pertinent to this case, stated:
When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide.
(c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor. [MCL 600.2925d; MSA 27A.2925(4) (emphasis added).]
This statute, which was derived from § 6 of the Uniform Comparative Fault Act (ucea),[3] 12 ULA 147, is *528 significant in recognizing legislative intent to abolish the common-law view. See generally anno: Release of one joint tortfeasor as discharging liability of others under Uniform Contribution Among Tortfeasors Act and other statutes expressly governing effect of release, 6 ALR5th 883 (1992).
Moreover, I am convinced that fundamental fairness obligates us to reject the flat-bar rule. Certainly, the flat-bar rule is the simplest of the three rules to apply to facts such as those in this case, but that criterion should not guide this decision. As the authors of one legal treatise opined, “ [t]he only desirable rule would seem to be that a plaintiff should never be deprived of a cause of action against any wrongdoer when the plaintiff has neither intentionally surrendered the cause of action nor received substantially full compensation.” Prosser & Keeton, Torts (5th ed), § 49, p 335. Thus, the federal district court in McInnis v Harley-Davidson Motor Co, Inc, 625 F Supp 943, 954-955 (D RI, 1986), was loath “[t]o preclude redress on the basis of a legal fiction arising from the chance insertion of boilerplate wording in a printed form of release procured by one other than the defendant” because to do so would be at odds with fundamental fairness. Indeed, the United States Supreme Court *529 made the practical observation that the common-law or flat-bar rule would “frustrate such partial settlements, and thereby promote litigation.” Zenith, supra at 347. Therefore, I conclude that the flat-bar rule of interpretation, which holds that a general release is unambiguous as a matter of law, is inconsistent with Michigan’s enactment of a release-contribution statute and contrary to fundamental fairness.
This analysis does not resolve the question of which of the two remaining rules, the specific identity rule and the intent rule, is the better rule. Indeed, as decisions from across the nation confirm, the operative statutory phrase from the release-contribution statute, “unless its terms so provide,” can arguably support application of either the specific identity rule or the intent rule.[4] I am persuaded that only the intent rule of interpretation ensures that injured plaintiffs *530 will not be barred from recovery because they executed releases in which they unknowingly and unintentionally discharged joint tortfeasors.
When the United States Supreme Court deliberated over whether a stranger may rely on omnibus language within a general release, it, too, chose the intent rule. In Zenith, supra at 342-343, the defendant had argued that damages were not recoverable because of a release executed between the plaintiff and other coconspirators in a separate antitrust action, but the defendant was neither a party to the release nor encompassed by the general phrase “subsidiaries and successors” used in the release. The trial court nonetheless found that the defendant was entitled to the benefit of the release because the plaintiff had failed to expressly reserve any rights against the defendant. Id. at 343. The United States Supreme Court disagreed. Having rejected the common-law or flat-bar rule, the Court next rejected the specific identity rule because the specificity required by that rule would create “a trap for unwary plaintiffs’ attorneys.” Id. at 347. Therefore, the Court concluded that the *531 “straightforward rule is that a party releases only those parties whom he intends to release.” Id. Although Zenith was an antitrust case, the Supreme Court’s decision has been interpreted broadly by other courts as support for adoption of the intent rule. See Avery v United States, 829 F2d 817, 819 (CA 9, 1987), and cases cited therein.
Because the intent rule holds that extrinsic evidence should be allowed to reveal the intentions of the parties with respect to the scope of the general release, the majority concludes that it runs afoul of the parol evidence rule, which excludes evidence of prior contemporaneous agreements that contradict, vary, or modify an unambiguous writing intended as a final and complete expression of the agreement. See UAW-GM Human Resource Center v KSL Recreation Corp, 228 Mich App 486, 491; 579 NW2d 411 (1998). Also, the parol evidence rule clearly applies to releases. See, e.g., Erkiletian v Devletian, 299 Mich 95; 299 NW 821 (1941). Further, an integration clause would invoke the rule and prevent introduction of extrinsic evidence between the parties to the document. See, e.g., In re Backofen Estate, 157 Mich App 795, 800; 404 NW2d 675 (1987).
While it is generally correct that an unambiguous document must be interpreted solely on the basis of the information contained within its four comers, that is not always the case. Neves v Potter, 769 P2d 1047, 1054 (Colo, 1989). When a stranger to a release attempts to rely on omnibus language contained within the document, as in this case, parol evidence is admissible to establish whether the parties intended the release to apply to the nonparty. Accordingly, in applying the intent rule in Zenith, the United States *532 Supreme Court looked to the language of the parties’ previous contract, which established the parties’ clear intent to exclude the defendant. The Supreme Court provided the following authority for looking to extrinsic evidence:
Resort may be had to the contract in construing the release since the parol evidence rule is usually understood to be operative only as to parties to a document, and HRI here was not a party to the release. See Stern v Comm’r, 137 F2d 43, 46 (CA 2, 1943); O’Shea v New York C & St L R Co, 105 F 559, 562-563 (CA 7, 1901); Restatement (Second) Torts § 885, Comment d^(Tent Draft No 16, 1970). See generally 9 Wigmore, Evidence, § 2446 (3d ed 1940). [Zenith, supra at 348, n 12.]
The Supreme Court’s opinion in Zenith has provided support for other courts to take the position that parol evidence is admissible to establish whether parties intended a release to apply to a nonparty. For example, the Supreme Court of Colorado in Neves, supra at 1054, stated that “ [t]his exception to the parol evidence rule accurately reflects Colorado’s unsympathetic position toward parties who seek to take gratuitous advantage of an agreement when they are not parties to the agreement.”[5] Similarly, in rejecting the defendant’s argument that the integration clause in the release required a holding in his favor, the Oregon Court of Appeals stated, “We see no possible relevance that that provision, agreed to by the parties to the release, can have on whether parol *533 evidence is admissible to establish whether the parties intended the release to apply to a nonparty.” Brackenbrough v MacCloskey, 42 Or App 231, 236; 600 P2d 481 (1979). Indeed, this Court, too, has stated that it agrees with “the majority of courts which hold that the parol evidence rule cannot be invoked either by or against a stranger to the contract.” Denha v Jacob, 179 Mich App 545, 550; 446 NW2d 303 (1989), citing 30 Am Jur 2d, Evidence, § 1031, pp 166-167. Therefore, because the parol evidence rule is operative only with respect to parties to a document, it cannot be invoked either by or against a stranger to the contract. Hence, in order to determine the intentions of the parties about the scope of a general release, extrinsic evidence should be allowed to determine whether a stranger may rely on the omnibus language “all other parties, firms, or corporations” that is contained within a release.
In applying the intent rule to the boilerplate wording that purported to release the vast array of “all other parties, firms or corporations” in this case, the trial court should have examined the intentions of the parties to the release with the aid of extrinsic evidence and determined whether plaintiff intended to release from liability American States, the insurance company that previously expressed no interest in settling with plaintiff. Of course, in doing so, the lower court would not have been constrained to find that the parties did not intend to release American States from liability. See, e.g., Chakov v Outboard Marine Corp, 429 A2d 984 (Del, 1981) (examining the extrinsic evidence and finding that the parties clearly manifested an intention that the release in question be a general release covering third parties). However, the *534 trial court should not have summarily dismissed plaintiffs claim against defendant where more factual development could have provided a basis for recovery. See Rheaume, supra. Therefore, I would reverse the order of the trial court granting defendant summary disposition and remand this case to the trial court for further proceedings consistent with this opinion.

 In Theophelis v Lansing General Hosp, 430 Mich 473, 504-505; 424 NW2d 478 (1988), a plurality of the Michigan Supreme Court referenced the United States Supreme Court’s decision in Zenith, supra. The lead opinion held that the common-law rule that the release of an agent discharged the principal from vicarious liability was not abrogated by the release-contribution statute, MCL 600.2925d; MSA 27A.2925(4). Theophelis, supra at 485-491.

 Compare Central States, Southeast & Southwest Areas Pension Fund v Melody Farms, Inc, 969 F Supp 1034, 1034-1043 (ED Mich, 1997), with Taggert v United States, 880 F2d 867, 870 (CA 6, 1989). Compare Lee v Auto-Owners Ins Co, 201 Mich App 39, 41; 505 NW2d 866 (1993), rev’d on other grounds 445 Mich 908 (1994), with Grzebik v Kerr, 91 Mich App 482, 486; 283 NW2d 654 (1979).

 In Dep’t of Transportation v Thrasher, 446 Mich 61, 64-68; 521 NW2d 214 (1994), our Supreme Court discussed how the Legislature’s effort at *528 tort reform was loosely based on a blend of ucfa sections, including § 6, which provides the following:
A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person’s equitable share of the obligation, determined in accordance with the provisions of Section 2. [Id. at 67-68.]

 Courts that were uniform in finding that the common-law view had been abolished by enacting a state statute based on either the ucfa or the Uniform Contribution Among Tortfeasors Act (ucata), 12 ULA 185, nonetheless divided in their choice between the two remaining rules.
Courts finding support for the specific identity rule include Moore v Missouri P R Co, 299 Ark 232, 239; 773 SW2d 78 (1989) (concluding that in order to satisfy the language of the state statute, broad boilerplate language is insufficient and a release must instead name or otherwise specifically identify the tortfeasors to be discharged); Saranillio v Silva, 78 Hawaii 1, 16; 889 P2d 685 (1995) (“Construing releases to discharge joint tortfeasors not specifically designated on the face of the release would, in many cases, effectively perpetuate the common law rule and therefore frustrate the purpose of the statute.”); Alsup v Firestone Tire & Rubber Co, 101 Ill 2d 196, 201; 77 Ill Dec 738; 461 NE2d 361 (1984) (“We do not consider that the modifying language that foUows, i.e., ‘unless its terms so provide,’ should be interpreted to aHow the legislative intendment of nullifying the common law rule to be frustrated through the use of what are often general release forms.”); Aid Ins Co v Davis Co, 426 NW2d 631, 634 (Iowa, 1988); Beck v Cianchetti, 1 Ohio St 3d 231, 235; 439 NE2d 417 (1982) (“AHowing a discharge based upon general language which does not name or identify a tortfeasor perpetuates the common law rule and is contrary to the statute.”); Bjork v Chrysler Corp, 702 P2d 146, 161-162 (Wy, 1985).
*530 Courts finding support for the intent rule include McInnis v Harley-Davidson Motor Co, Inc, supra at 957 (concluding that “if faced with this stock release containing boilerplate verbiage purporting to acquit ‘all persons, firms or corporations,’ the Rhode Island courts would examine the intentions of the parties to the release with the aid of extrinsic evidence); Sellon v General Motors Co, 521 F Supp 978, 983-984 (D Del, 1981); Manos v Trans World Airlines, Inc, 295 F Supp 1166, 1169-1170 (ND Ill, 1968) (applying California law); Neves v Potter, supra at 1055 (finding that the intent rule best effectuates the purpose of the uniform act in that it retains the Mabifity of joint tortfeasors unless the releaser intended to discharge aU potential claims); Hurt v Leatherby Ins Co, supra at 434 (recognizing that the state legislature sought a middle ground based on the intent of the parties and finding that “the manifestation of intent must be more exphcit than signing a printed form which happens to contain broad, general release language in addition to providing spaces for the specificaHy discharged parties”).

 See also McInnis, supra at 952; Lemke v Sears, Roebuck & Co, 853 F2d 253, 255 (CA 4, 1988) (applying Virginia law); Cleveland v Cleveland Electric Illuminating Co, 538 F Supp 1287, 1289-1290 (ND Ohio, 1980); Smith v Falke, 474 So 2d 1044, 1047 (Miss, 1985); Williams v Physicians & Surgeons Community Hosp, Inc, 249 Ga 588; 292 SE2d 705 (1982). See generally 66 Am Jur 2d, Release, § 52, p 730.